## OGLESBY AND WIFE *vs.* HALL.

1. O. permits his wife to sell cakes, etc., on her own accouunt, from the earnings of which she buys a negro, taking the title in her own name, by his consent. She keeps and holds the negro as her separate property, paying the taxes all the time:

*Held*, that the negro vested in the wife as her separate property against her husband, and one claiming under him as a volunteer.

In Equity, in Elbert Superior Court. Decision by Judge THOMAS, at March Term, 1860.

This was a bill filed by James C. Hall, against James Oglesby and Sarah Oglesby, his wife, the statements of which are substantially as follows:

That on the 20th August, 1858, the said James Oglesby executed and delivered to complainant his certain deed, whereby he gave and conveyed and delivered to complainant a negro woman named Mary, and her four children, together with their future increase, in trust, to hold the same for the joint use of the said James Oglesby, and Sarah, his wife, for and during their joint lives, and for the sole and separate use of the survivor, during his or her life, and at and upon the death of the survivor, remainder to complainant in *fee simple* forever.

The bill further states that said James and Sarah have said negroes in their possession, and that complainant has reason to believe, and does believe, that they are preparing, and have it in contemplation, to remove said negroes clandestinely beyond the limits of the State, and thereby endangering the rights of complainant as remainderman in and under said deed, and subjecting him to serious and total loss, unless a writ of *ne exeat* or *quia timet* do issue, securing said negroes to complainant after the termination of the life-estate.

The bill suggests and prays that, owing to the condition of said negroes, consisting of a woman and four small children, that they be sold and the proceeds of sale be invested, and the interest thereon be paid annually to defendants during their joint lives and the life of the survivor, and then the principal be paid to complainant as absolute owner thereof.

The bill prays that defendants be enjoined from removing

or running said negroes, and that, in the meantime, said slaves be secured to answer the final order or decree in the premises, and that they be sold and the proceeds be invested and applied as aforesaid.

The deed under which complainant claims, was annexed as an exhibit to the bill, and its only consideration is expressed to be love and affection.

The bill was sworn to, and received the sanction of the Chancellor, who ordered the injunction to issue, and that defendants be arrested and held in custody until they give bond and security therefor.

Under the processes issued upon the Judge's fiat, the sheriff seized upon and took into his possession the negroes referred to in the bill.

Mrs. Oglesby filed her separate answer, in which she states that she had no knowledge of said deed until some time after its execution ; a short time since, her husband admitted the fact to her that there was such a deed, but said that complainant had frequently urged him to make the deed, and finally got him intoxicated, and then procured and got him to sign the same. She denied that her husband had any right, power or authority to execute a deed conveying said negroes, they being her own separate property and estate, purchased with her own money, and set apart to her. The circumstances under which she became possessed of said slaves are about as follows : In 1847 she and her husband moved to her brother's in Clark county, and by their and his consent, respondent sold cakes for her own benefit (her husband being almost helpless) until she obtained a little money, which she deposited in the bank at Athens, *to her own credit.* She continued thus to deposit her small earnings until December, 1849, when she, *in her own riyht,* from her small earnings thus saved, purchased from James Daniel the negro woman, Mary, for five hundred and fifty dollars. Of this she paid, in cash, $367 00, and for the balance she gave her individual note, with her brother, George Booth, as her security, and which note her brother paid off with money furnished to him by respondent, and which she made in the same way—by selling cakes, etc. ; that the bill of sale made by Daniel was to respondent, and expressed to be, and was for the consideration of $550 00 received from respondent, and to which was added by Mr. Daniel the following: " This bill

of sale, made to Sarah Oglesby, by request of James Oglesby, her husband;" that her husband always recognized and declared this to be the separate and individual property of respondent, laying no claim thereto; she submits that this was substantially the creation of a sole and separate estate in herself, and that a Court of Equity will uphold it as such and protect her rights therein, notwithstanding the absence of a trustee; she denies that she intends running off said negroes, but admits that she has it in contemplation to remove from Elbert county, to escape from the attempts and snares of others to impose upon an imbecile husband, and where she has no brother or near relative to protect and defend her; that she has always had possession of, and paid the taxes upon these negroes, and that her husband never returned them as any part of his taxable property or claimed them as his.

James Oglesby, the husband, answered: That he was an unlearned man, and is not certain that he ever heard the deed read; he was drinking, but not so drunk as not to know what he was doing when he signed the deed; had told complainant frequently that he had no title or claim to the negroes; that they were the separate property of his wife, and that he could not sell them or give them away; complainant still urged him to make the deed, and said that he would fix it with the old lady if she found it out; finally carried respondent from the grocery to Mr. Thomas' office, where the deed was written and signed; complainant gave all the instructions to Mr. Thomas, except as to the names and ages of the negroes, which were stated by respondent, and he only executed the paper at the continued importunity of complainant, who knew that the negroes belonged to respondent's wife; they agreed to keep the deed a secret from respondent's wife, and if she found it out and made a fuss about it, complainant promised to give up the deed to be destroyed. He states the circumstances under which the negro woman was purchased, which correspond with the statement in relation thereto made by Mrs. Oglesby in her answer; states that he consented to the purchase, and that the bill of sale should be executed by Daniel to his wife; that he always considered the negroes as her separate property; that he did not pay a dollar of the purchase-money, and all the parties

Oglesby and Wife *vs.* Hall.

supposed that the bill of sale and the transactions connected therewith secured to her a separate estate in the property.

The answer being filed, counsel for defendants moved to dismiss the order which had been granted taking the negroes out of the possession of the defendents, on the following grounds :

1st. That all the equity of the bill had been fully sworn off by the answers.

2d. That a Court of Equity will not interfere in behalf of a mere volunteer.

The presiding Judge, after argument, held and decided that the equity of the bill was not sworn off by the answers, and that the rule as to volunteers did not apply in a case like this, and overruled the motion to dissolve or vacate said order.

To which decision counsel for defendants excepted, assigning said decision as error.

T. R. R. Cobb, and Hester & Akerman, for plaintiffs in error.

Vanduzer, *contra.*

*By the Court.*—Lyon, J., delivering the opinion.

The equity of the bill, if it has any, rests on a paper signed by James Oglesby, without a seal, purporting to give and deliver the negroes in controversy to him, in consideration of love and affection. There never was, in fact, any delivery of the negroes. There was not only no consideration in fact, but that expressed in the deed shows that the deed was without consideration to support it. It is not stated in the bill that the negroes belonged to James Oglesby, or that he had any right to convey them. The answers show that James Oglesby had no title to or claim upon the negroes at the time he made the paper under which the complainant claims; that the negroes belonged to Mrs. Oglesby, the wife of James, and not to him, and that the complainant knew it at the time he took this paper; that Mrs. Oglesby had bought and paid for the negroes with money from her own earnings, by the sale of cakes, etc.; that she took the title to herself, all by the permission of her husband; that she has constantly

'paid the taxes on them since her purchase in 1849, and all the time claimed and held them as her separate property, and that it was well known to the complainant; that the deed had been wheedled out of James Oglesby, who was an infirm and old man, while in a state of intoxication, by the complainant. These facts are sufficient to vest in Mrs. Oglesby a separate property to the negroes as against her husband and the complainant, who is, at best, but a volunteer, even admitting that the paper was sufficient to convey what title James Oglesby might have had in them. This we do not for an instant admit. On the contrary, we are strongly inclined to the opinion that the paper, upon its very face, is void for want of a consideration, and we do not put our decision of this case on that ground, because it is not necessary to do so to dispose of it. But the facts show that the title was in Mrs. Oglesby. "If without any ante-nuptial agreement the husband should permit his wife, after marriage, to carry on business on her sole and separate account, all that she earns in trade will be deemed to be her separate property, and disposable of by her as such." *Story's Equity, sec.* 1378. This is pretty respectable authority, and pretty strong on the point, but were it not so, and no other dictum or precedent could be found for it or any strongly against it, we would still so decide. If it be said that the facts set up by the answer are not responsive to the bill, we reply, that they are sufficiently so, we think. The bill ought never to have been sanctioned in the first place. Mrs. Oglesby was no party to the title complainant sets up. What right had he to disturb her possession under the allegations in his bill? Having done so, she had the right to come in and be heard in defense of her title and possession. The Court below should, upon the application of plaintiffs, have dissolved the *ne exeat* and restored the negroes to the possession of Mrs. Oglesby. As he did not, the judgment of the Court below must be reversed on that ground.