MARY A. CAVENAUGH AND THE COLUMBUS IRON WORKS COMPANY, plaintiffs in error, *vs.* GOTLIEF AINCHBACKER, propounder of SUSAN HARRIET NAIGLEY'S WILL, defendant in error.

A married woman in this State, who as a midwife acquires money by her separate earnings, with the consent of her husband, and afterwards with his consent, purchases real estate, and takes the title thereto in her own name, may devise the same by will, as her separate estate, with or without his assent, and after her death, the husband cannot invalidate such devise by a change of the title to the property in his own name, especially when his *express assent* was given to such devise at the time of the execution of the will.

*Caveat* to Will.   Tried before Judge.WORRILL, Muscogee Superior Court.   May Term, 1867.

Jacob Naigley was a tailor by trade, but seldom if ever worked thereat.   He was a quiet, sober man, and spent his time in waiting upon and carrying about his wife while she was practising midwifery, at which she was generally and actively engaged.   She made a will and died.   Ainchbacker offered it for proof in solemn form in the Court of Ordinary of Muscogee county.   *Caveats* were filed by the Columbus Iron

Works Company, and Mrs. Cavenaugh.   The Company were interested because they claimed part of the land devised by said will, and Mrs. Cavenaugh because she claimed another part of it.   Mrs. Cavenaugh came to the succession on this wise : After Mrs. Susan H. Naigley died, Jacob Naigley married Mrs. Madden, and died, leaving no issue by her ; his widow married John Cavenaugh, who took possession of said property, and then she died ; then Cavenaugh married Miss Magnes, and died, leaving her in possession of the property.

The grounds of *caveat* were, that at the time the pretended will was executed by Susan Harriet Naigley, she was a *feme covert,* and if she had the consent of her husband to make the same, that consent had been revoked.

It went to the appeal by consent.   The trial there brought out the foregoing and the following facts.

Jacob Naigley sued John Afflick in the Inferior Court of said county, and obtained a judgment against him for $1500.00 principal, $66.00 interest, and $12.50 costs, and on the 13th of March, 1848, obtained a *fi. fa.* for the enforcement of his judgment.

Thereupon a levy was made and disposed of as follows :

" Levied this *fi. fa.* on the lot at the South-east corner of Front and Dillingham streets, containing a front of 147 feet 10 inches on Dillingham street, and a front of 35 feet, running back for quantity (?) on Front street.   Levied on as the property of defendant.

A. S. RUTHERFORD, Sheriff."

" The above levy sold on the first Tuesday in October, with the encumbrance of the lien of Samuel R. Andrews for the sum of fifty dollars.

A. S. RUTHERFORD, Sheriff."

" Received of A. S. Rutherford, Sheriff, thirty-one dollars and twenty-five cents, the amount due after deducting all cost for two sales of this levy.   October 3d, 1848.

JACOB NAIGLEY."

And on the 3d of October, 1848, said sheriff executed a deed, (reciting that he had that day sold said property under

said *fi. fa.*, &c., that Susan Harriet Naigley was the highest bidder, and it was knocked off to her for fifty dollars, and that she had paid him that sum,) conveying all of said lot with its members and appurtenances to Susan Harriet Naigley, her heirs and assigns. It was in the usual form of sheriff's deeds, and duly executed.

Afterwards Jacob Naigley made the following paper:

STATE OF GEORGIA, COUNTY OF MUSCOGEE.

Whereas, by the common law of force in said State a *feme covert* is precluded from making a testament, devising real estate, without the license of her husband first had and obtained: And whereas my wife Susan Harriet Naigley is in possession of a parcel or lot of land in the city of Columbus, situated on the South-east corner of Front and Dillingham streets in said city, which she is desirous of devising by will. Now, know all men to whom these presents may come, that I, Jacob Naigley, for myself, my heirs and assigns, do hereby, in consideration of my love and affection for the said Susan Harriet, and for divers other causes and considerations, we hereunto moving, freely, cheerfully and unconditionally grant to the said Susan Harriet, the right and authority to devise and dispose of the above described lot or parcel of land to any and such person or persons as she may see fit, hereby binding myself, my heirs and assigns, from disturbing those who may be in possession of said property under the said devise, and warranting and defending their title to the same, and waiving all my right and privilege to disturb or interfere, which I may have under the common law or statutes of force in Georgia.

In testimony whereof, I have hereunto set my hand and seal, this 20th July, 1850.

JACOB NAIGLEY, [L. S.]

Signed, sealed and acknowledged in presence of

A. ANDERSON,

S. HOFFMAN,

ALEX'R C. MORTON, Justice Inferior Court.

Cavenaugh, &c., *vs.* Ainchbacker, &c.

At the same time and place, and in presence of the same persons as witnesses, Susan Harriet Naigley executed her will in the usual form of such instruments.

It was substantially as follows:

GEORGIA, MUSCOGEE COUNTY.

I, Susan Harriet Naigley, * * * * * * * * * * * * * and " having first obtained license and authority from my lawful husband, do therefore make this my last will and testament, hereby revoking all others heretofore made by me."

Item 1st, provided for christian burial, &c.

Item 2d, directed prompt payment of her debts.

Item 3d, Whereas by a deed made to me, on the third day of October, in the year one thousand eight hundred and forty-eight, by Adolphus Rutherford, sheriff of said county, I came into and now hold, by the consent of my husband, possession of a lot or parcel of land in the city of Columbus, being the South-east corner of Front and Dillingham streets, having a front on Front street of thirty-five (35) feet, and a front on Dillingham street of one hundred and forty-seven feet ten inches, known as having once been the property of one John Affleck, I do hereby give, bequeath and devise the above discribed lot or parcel of land to my husband Jacob Naigley, to be used and employed by him, and not at all subject to his debts or to be sold by him, for and during his natural life, and at his death, to be held and employed by my beloved grand children hereinafter named, to be held by them in joint tenancy. The grand children herein alluded to, are Goitlief Ainchbacker, Samuel Ainchbacker, and Louis Ainchbacker. And in the event of the death of all of said children before the death of my said husband, then the above described property to be his in fee simple; and in the event of the death of either of the said children, then the property to the survivor or survivors of them; and in the event of the death of all of said children and my said husband, then the before described property to go to the heirs of said children."

The will was written by Morton when Mrs. Naigley was the wife of Jacob Naigley, and when she was of sound and

disposing mind, and the license by her husband was executed under Morton's advice to make her will valid. She died about four months after the will was executed.

Afterwards, on the 11th day of October, 1851, Jacob Naigley executed an instrument under seal and attested by three witnesses, in the words following: "Whereas, on the 20th day of July, in the year 1850, I, Jacob Naigley, by instrument of writing, then signed and sealed by myself, I did then declare that Susan Harriet Naigley, then in life, being the wife of me, the said Jacob, might, of her own will and accord, devise certain real estate described by said instrument as being then in the possession of said Susan Harriet Naigley, viz: lot on the South-east corner of Front and Dillingham streets, in the city of Columbus: And whereas, the power and authority thereby vested, amounting alone to the making a disposition of the same by will, by and through my said wife, then in life, but now deceased: And whereas, the right to revoke any will that the said Susan Harriet Naigley may have made, devising and disposing of any real estate then and now belonging to me: Now, know all men, that I, Jacob Naigley, being of sound mind, do hereby revoke and recall all power and authority then intended to be vested by me in my aforesaid wife, the said Susan Harriet. And I do hereby revoke any and all wills, instruments, deeds, gifts or conveyances, any and all devises whatever that the said Susan Harriet Naigley may have made of the said lot of land in the city of Columbus, on the South-east corner of Front and Dillingham streets, and the same is hereby declared void and of no effect whatever, hereby retaining to myself, my heirs and assigns, all the right and title to the aforesaid lot of land, as fully as if no such instrument was ever made, or any will ever made by the said Susan Harriet Naigley to any person or persons whatever. In testimony," &c.

This revocation was recorded in the office of the Clerk of the Superior Court, on the 30th of October, 1851.

Afterwards, on the 11th of November, 1851, Jacob Naigley obtained an order of said Inferior Court that the then sheriff should make a deed to said Jacob Naigley for said lot.

It was recited in the order that Rutherford levied on said land by said *fi. fa.* and sold it, that it was knocked off to Jacob Naigley at $50, and that Rutherford failed to make a deed therefor to Jacob Naigley, but "improperly" executed said deed therefor to said Susan Harriet Naigley. And according to said order, F. A. Jepson, sheriff, on the day last aforesaid, executed a deed to Jacob Naigley for said land, in the usual form of sheriff's deeds. It was duly recorded on the same day.

The evidence being closed, the Judge charged the jury among other things, as appears in the opinion.

The *Caveators* requested the Court to charge the jury that the receipt upon the *fi. fa.* by Jacob Naigley in evidence, is such a receipt as is proper to be given when the plaintiff in *fi. fa.* purchases at a sale under his own *fi. fa.*, and therefore such receipt does not prove that he was or was not the purchaser and paid the money, nor does such receipt tend to prove that any other person paid the money: further should they find, from the evidence, that the Columbus Iron Works Company are purchasers of the property in controversy for a valuable consideration, deriving their title from Jacob Naigley, the husband, then the equitable separate estate in Mrs. Naigley, such as might ordinarily enable her to convey by will, such will cannot be set up by the propounder (he being a mere volunteer,) so as to defeat the title of such purchasers for value.

The Judge declined to give either of said requests. The jury set up the paper as Mrs. Susan Harriet Naigley's last will.

The errors assigned by the plaintiffs in error are the charges of the Court as aforesaid, and his refusal to give in charge said requests.

W. WILLIAMS and B. HILL for plaintiffs in error.

ALEX'R MORTON and H. L. BENNING for defendant in error.

33

WARNER, C. J.

The main question presented for the judgment of the Court in this case is, the right of Mrs. Naigley, a married woman, to devise by will the property specified in the record, under the state of facts presented therein. A married woman may make a will in this State, when having a separate estate *absolutely*, or an estate in *expectancy her husband consents to her disposing of the same*. Revised Code, Section 2375. The husband's consent is not necessary except to dispose of an estate in *expectancy*. In Liptrot vs. Holmes (1st Kelly's Rep. 389) this Court recognized the principle, that a *feme covert* might dispose of her *separate property*, that the moment property can be enjoyed, it must be enjoyed *with all its incidents*. The property in controversy in that case, was *personal* property, but we think there is no sound distinction between the right of a *feme covert* to dispose of her separate personal estate and her separate real estate by will, inasmuch as both estates under our law are placed on the same footing as to distribution : the more especially in this case, as the personal earnings of the wife were received by her in money, and invested in real estate by the *consent of her husband*. The errors assigned are, to the charge of the Court as given to the jury, and the refusal of the Court to charge the jury as requested by the counsel for the caveators. The Court below charged the jury "that if the property disposed of by the will was the separate estate of Mrs. Naigley, purchased with her own earnings as a midwife, with the consent of her husband, then she had the right, although a *feme covert*, to dispose of the same by will without the assent of her husband. If, therefore, the jury should believe from the evidence that Mrs. Naigley had earnings separate from that of her husband and with his consent, and that she purchased the property in controversy and paid for it with her own money, and took the sheriff's deed therefor to herself, and all this with the *assent of her husband*, then the property became her separate estate, and she had the right to devise the same by will without her husband's consent, and in such event,

the fact that the husband procured a change of the title after her death, cannot effect the validity of her will so made." The jury found a verdict in favor of the propounder of the will—which establishes the fact that the property devised by Mrs. Naigley was her *separate property*. We find no error in the charge of the Court below to the jury upon this point in the case; the question was fairly submitted to them upon the evidence, and this Court is satisfied with their verdict.   Nor is there any error in that part of the charge of the Court relating to the acts of the husband in procuring a change of title after Mrs. Naigley's death, so far as the *validity* of her will is concerned.   The property devised by her was her *separate property*, or it was not, at the time of making her will, and at the time of her death.   The subsequent conduct and acts of the husband *manipulating* that title, either for his own benefit or that of others, *after her death*, could not affect her right to dispose of her separate property by will, or *invalidate* her act in doing what she had the lawful right to do, with or without his assent,—the more especially *with his assent*—at the time the will was executed. The first request to charge the jury was properly refused by the Court below, for the reason that it requires a definite expression of opinion of the Court to the jury as to the effect and weight of the evidence, which the receipt upon the *fi. fa.* ought to have upon their minds.   The Court admitted the evidence as *competent* for the consideration of the jury, and that was all the Court had any right to do with it; the effect and weight of that evidence was a matter exclusively for the consideration of the jury.   The receipt upon the *fi. fa.* speaks for itself, and it was not for the Court to say whether it was a *proper receipt to be given,* or not; that was a question for the jury, and it was also a question for the jury to say what it *tended to prove,* and not a question for the Court to decide.

The second request to charge the jury was also properly refused, in view of the issue then before the Court for trial. Whatever rights the Columbus Iron Works may have to the property as purchasers from Jacob Naigley, the husband, may be hereafter asserted in a proper case made before the Court.

The question upon trial was, whether Mrs. Naigley had the right to dispose of the property by will as her separate estate.    The title to the property devised by the will, as between the devisees and the Columbus Iron Works, was not before the Court for trial.

Let the judgment of the Court below be affirmed.