## GORMAN *et al. vs.* WOOD.

1. While prior to 1861 the husband might permit his wife to keep her earnings and buy property during coverture, which she could hold as against him and volunteers under him, yet after receiving her funds, investing them in his own name, and holding property purchased therewith until the lien of a judgment against him had attached, he could not then set up her equity so as to defeat the title of a *bona fide* purchaser under the judgment.

(*a.*) Nor could that result be accomplished by the husband recognizing her equity and allowing a deed to be made to her after the lien of the judgment had attached to the land.

2. If a husband uses the money of his wife, with or without her consent, and thereby acquires title in himself to property, third persons who *bona fide* take title for value to such property will be protected.

Husband and Wife. Title. Trusts. Equity. Debtor and Creditor. Before Judge SIMMONS. Bibb Superior Court. October Term, 1881.

Reported in the decision.

LANIER & ANDERSON, for plaintiffs in error.

J. RUTHERFORD; BACON & RUTHERFORD, for defendant.

CRAWFORD, Justice.

About the year 1860, George Wood bought of one Thompson the land which is the subject-matter of this controversy, and paid him $330.00 in cash for it, took a bond for titles, went into possession, gave in the same for taxes as his own up to the year 1876, and sought homestead therein before that date. In the year 1874 he became security for one Merritt upon a bond, on which a judgment was obtained in November, 1875, and a *fi. fa.* issued, the property sold, bought by the Wilson Sewing Machine Company, which went into possession under the sale, and this suit is brought by Rachel Wood, the wife of the said George, to recover the same.

She rests her title upon the ground, that the money which paid for the land was hers, made by her whilst keeping a boarding house, and which her husband allowed her to have. She also claimed to have collected the rents from the tenants as belonging exclusively to herself. In addition to the foregoing facts she relied upon a deed made by Thompson to her in the year 1876.

The questions made in the trial below and involved in this appeal are, what is necessary to secure to the wife her earnings prior to 1861, and the act of December, 1866. And when such earnings are hers, and invested in land by the husband, with bond for titles taken to himself, and he exercises other general acts of ownership over it until a judgment be obtained against him, has the wife such a right therein as will defeat the title of a *bona fide* purchaser, even though she may have subsequently acquired a deed thereto ?

That the husband might, anterior to 1861, permit his wife to have her own earnings, whilst they lived together, and allow her to buy property, taking title to herself by his consent, which she can hold as against him and volunteers under him, has been recognized by this court in 30 *Ga.,* 386, and in 36 *Ib.,* 506. And so also after the act of

1851–2 her acquisitions and those of her children, whilst living separate from her husband become vested in and are absolutely her separate property, free from all debts, contracts or control of her husband. But it nowhere appears that the legislature or the courts have gone further, and allowed the wife to buy property through her husband, pay the money through him, hold the evidence of title in his name, and after a judgment is obtained against him recognize in her an unknown secret trust, existing alone in parol, and of which no actual or constructive notice exists.

Whatever may have been the common law as to the right of the wife to her pin-money, it cannot affect the question raised in this case under our statute; nor does the case in the 30th *Ga.*, 386 of the baking cakes by the wife; as the business here claimed to have been pursued was that of keeping a public house for the entertainment of boarders, and for the collection of which board the wife could not in her own name have collected a dollar by suit, unless the statute making her a free trader had been complied with.

But it is said that although the title might not have been in the wife prior to 1866, yet if the husband recognized it after that time as being in her, because the money that paid for it was hers, then that would give her a perfect title, and if afterwards she got the deed, that it would relate back to the time of the purchase and protect it as hers.

To support this view, the case of *Sterling vs. Arnold,* 54 *Ga.*, 690, is relied upon; but the difference between the cases is, that the money of the ward went into the land in that case, and in this, as appears from the proof, it was the money of the husband under the law, and not that of the wife.

It is further said, that the act of 1861, allowing the wife to deposit her earnings in savings banks and control it, dispose of it, and devise it, is to be con-

strued in favor of the wife's right to invest in land, etc. However this may be, it cannot affect this case, as the purchase and payment were made before the act was passed.

But, supposing the money to have been really the property of the wife, and the husband had purchased the land therewith, how would the case stand ? In *Moye vs. Waters*, 51 *Ga.*, 15, 16, this court say : " The mere fact that property is purchased by one, and paid for with the money of another, does not vest the title to such property as against third persons in the one whose money paid for it. Nor does any legal or equitable right spring out of such a fact in favor of such person, against innocent purchasers who in good faith take the title from one who is apparently the true owner, and in truth is so, except as to some secret equity of the party whose money has been used. There must be notice of such an equity before it can avoid a title, otherwise good. Hence, if a husband uses the money of the wife, with or without her consent; and acquires thereby title in himself to other property, third persons who *bona fide* take title for value from him to such property will be protected."

George Wood bought this property in 1860, paid all the purchase money and went into possession, this gave him a complete equity without any conveyance, bond or title. 54 *Ga.*, 602. This of course, provided the money was his, if it were his wife's, then she would have a complete equity which she could enforce as against him, provided she enforced that equity before credit was obtained upon the land by the husband, or there were judgment liens that had fastened upon it. But his having obtained credit without any notice of her equity, or having the lien of a judgment attach to this property, it would be inequitable and illegal to allow such intervening equity to destroy the rights of purchasers or *bona fide* creditors. 56 *Ga.*, 79; 54 *Ib.*, 543.

Besides, if it be true, as is claimed by counsel for de-

fendant in error, that the deed under which Rachel Wood claims title was obtained from Thompson with the view of defeating the collection of the debt against George Wood, and this was known to her, then such deed would be fraudulent and void.

There being no sufficient evidence to show that Wood ever yielded his right to this money, or his title to the property, until after the judgment was obtained against him, it does not even bring the case within the legal rule given by the court to the jury, and it should therefore have been withheld. Wood refused to allow the deed to be taken in her name when he bought, he held the bond for titles to himself through sixteen years, gave in the property for taxes in his own name, until the judgment was obtained against him, and never permitted his wife to have the deed to it until it became a question between his execution creditor and herself, then, and not until then, was his consent given.

So that in no view of the case under the law and the facts as shown by the record do we think that this verdict ought to stand.

Judgment reversed.