### GORMAN *et al. vs.* WOOD.

It has been held in this case (68 *Ga.*, 524) that the earnings of a married woman, who was not a free trader, or living separate from her husband, prior to 1866, did not constitute her separate estate, but belonged to her husband, and this is true whether such earnings were made from keeping a boarding-house, or from washing, ironing or cooking; and if the husband took such funds and invested them, taking a bond for titles in his own name, the husband's marital rights attached, and no trust could be implied in favor of the wife; and one who gave credit to the husband while he owned the property could not be charged with notice of any such trust, although the husband may have caused a deed to be made to the wife, in conformity to a previous understanding between them, after the credit was given.

October 21, 1884.

Husband and Wife. Debtor and Creditor. Title. Trusts. Before Judge SIMMONS. Bibb Superior Court. April Term, 1884.

Rachel A. Wood brought ejectment against Gorman, as tenant in possession, and the Wilson Sewing Machine

Company was made a party as the real claimant of the title.. On the trial, the evidence showed, in brief, as follows: Mrs. Wood was married to her husband, George Wood, in 1849. They lived together; he was a carriage maker;. she kept a boarding-house and retained the profits of it;. she also took in washing and ironing. Before or about the beginning of the war, she gave her husband money to buy the land in dispute from Thomson. She testified that the money was made by cooking, washing and ironing. Her husband made the purchase, and paid all the purchase money, but took a bond for titles in his own name, instead of a deed, because he thought there were people who considered that a man was trying to do wrong if he was holding as trustee or agent, and he kept the bond, thinking that some day he would persuade his wife to let him have it, but she never would consent. They lived in a house just across an alley from the property in dispute. She rented out the property and collected the rents, receiving them herself or sending her son for them. In 1874 or 1875, plaintiff's husband did not own anything except the lot on which they lived. Mrs. Wood claimed possession of the property until her tenant was ejected by the marshal of the United States. · On January 16, 1876, a deed was made by Thomson to Mrs. Wood to the property in dispute. She and her husband testified that they heard that there was some trouble in regard to Thomson, and that the deed was not so made to defeat creditors; that Wood had been sued sometime previously on a claim which the witness spoke of as the " Church claim," but that this was on the eve of being settled. Wood admitted that he had paid the taxes in his own name, but testified that he did so with his wife's money, and that he merely gave in and paid such taxes for her; also, that at the time of the purchase from Thomson,. he told the latter that he was buying the property with his wife's money; that she wanted it in her own name;. that he never expected to control it, but would prefer to have it in his name; that Thomson said he could have

it any way he wanted; that witness told him to make out a bond in his name, and whenever he could get his wife to agree to have it in his name, he would get the deed. He admitted signing, as security for Merritt, a bond to the Sewing Machine Company, and some other paper, which he said he did not read, and did not know what it was, and about which his testimony was rather confused. He stated that the agent of the company asked him if he was worth $5,000.00; to which he replied that he could not tell; that people thought he was worth " right smart." Plaintiff also showed that at the marshal's sale of the property, notice was given that it belonged to Mrs. Wood, and not to her husband.

The evidence for the defendant was, in brief, as follows: In 1874, Wood became surety for Merritt on a bond given to the Wilson Sewing Machine Company. On November 30, 1875, a judgment was rendered thereon in the United States Court at Savannah; a levy was made on the land in dispute, and it was sold on December 7, 1880, by the marshal to the company. Attached to the bond was an affidavit by Wood that he was worth, in real estate unincumbered, $2,000.00, besides personal property, being worth in the aggregate $4,000.00 above exemptions, indebtedness and liabilities. In February, 1876, Wood made application for a homestead, and the surveyor's plat included the land in dispute. (Plaintiff denied that the homestead taken by her husband had any connection with the land in controversy.)

Thomson testified that he bargained the land to Wood before the war, and gave him a bond for title; that he never recognized any other than Wood as having a right to the deed, and had no recollection of Wood's referring to his wife; that Wood bought the land and received the bond for title; that when he made the deed, Wood called on him, and said that he was in trouble about some church property, and asked that the deed be made to his wife, which was done.

The jury found for the plaintiff. Defendant moved for a new trial, on the following among other grounds:

(1), (2), (3). Because the verdict was contrary to law and evidence, against the weight of evidence, and without evidence to support it.

(4.) Because the court charged as follows: "If you believe from the evidence that he (George Wood) did give her (his wife) the privilege of carrying on that business (keeping a boarding-house) in her own name, and that by that business she accumulated this amount of money which went into the purchase of the land, and, at the time she gave him this money, she made him her agent to buy the land for her, and he did buy it for her, and told Thomson it was her money that bought it, and she went into possession at that time, and continued in possession from that time until she was ejected; that she exercised acts of ownership, collecting rents, and things of that sort; if you believe at the time, from the same evidence, that Wood never went into possession of it, or exercised any acts of ownership over it, or collected the rents, then I charge you that it will be her money and her land, and it would not be lawful to sell it for Wood's debts."

(5.) Because the court charged as follows: "Or, if you believe from the evidence that while his wife (the plaintiff) may have accumulated that money, that he bought the land in his own name, or took the bond for titles in his own name; that he exercised acts of ownership over it; that he rented it out, collected rents or made repairs, then I charge you that, whether it was his money or his wife's money, it would be subject to his debts, provided she did not assert her claim to it before he got credit on the faith of it, or before the judgment lien attached against him."— The proviso is assigned as error.

(6.) Because the court charged as follows: "But, on the other hand, if you believe that her money bought it (this land), and she was in possession of it, had control over it, and the Sewing Machine Company had notice of this when

they gave him credit, and before they obtained their judg ment, either actual or constructive notice, it would not be subject to his debts. Actual notice is the seeing Mrs Wood in possession of it, or a recorded deed on the deed book, if there was any record of it in the clerk's office."

(7.) Because the court charged as follows : " If they (the Sewing Machine Company) had constructive notice of it (the notice of what is stated in the sixth ground next before), it would be sufficient to bar them from recovery. Constructive notice is any notice which would excite the apprehension of any ordinary mind and prompt inquiry into the actual condition of things. Therefore, if you be lieve from the evidence that Mrs. Wood occupied this property from the time that it was purchased by Geo. Wood, either by herself or tenants, because when she rents it out the tenants' possession is hers ; therefore, if she was in possession of it from the time she bought up to the time this judgment lien went into operation, or was ob tained against him in Savannah before the sale ; if she ex ercised acts of ownership, rented it out and collected the rents, made repairs, then I charge you that that was con structive notice sufficient to put them on inquiry as to whether it was his property or hers ; if you find that was so, then you will be authorized to find for the plaintiff."

(8.) Because the court charged as follows: " In consid ering this question (of title), you will take all the evidence into consideration, and see what was said and done at the time Wood purchased the land, whether he purchased for himself or whether he purchased for his wife, whether he exercised acts of ownership over it, whether he rented it or made repairs, or gave it in as his own property."

(9.) Because the court charged as follows : " But if he (Geo. Wood) bought it (the land) in the name of his wife, and told Thomson it was his wife's money, and she went into possession and staid there, from that time it was her property."

(10.) Because the court refused to charge the following

written request: " That if George Wood paid Thomson all the purchase money for the land in dispute, and Thomson then made and delivered to said Wood a bond for title to the land, Wood acquired a complete equity in the land, and the title vested in him. If Wood, whilst the title thus stood, contracted the debt, and the Sewing Machine Company credited said Wood on the faith of said property, and if the company had no notice at that time that money claimed to belong to Mrs. Wood paid for the property, then the property was subject to Geo. Wood's debt, on its being sued to judgment. If these facts are satisfactorily proved by the evidence, and the proof further shows that the company bought the property at marshal's sale, it gave a good title, even though notice was given at the sale of Mrs. Wood's claim."

(11.) Because the court refused to charge the following written request: " The law contemplates that a creditor gives credit on the faith of all the property owned by his debtor at the time he gives him credit, whether the creditor actually knew what the property consisted of at the time or not."

(12.) Because the court refused to charge the following : " If the Sewing Machine Company had no notice of Mrs. Wood's claim until after its judgment was obtained against her husband (Geo. Wood), such notice cannot benefit the plaintiff in this case."

(13.) Because the court refused to charge : "Although the money which paid for the land was made by Mrs. Wood's personal labor, and although her husband consented that it should be her money, these facts cannot avail Mrs. Wood in this case, unless the Sewing Machine Company had notice of them before the judgment was obtained against George Wood."

The motion for new trial was overruled, and counsel for plaintiffs in error excepted.

This case was formerly before the Supreme Court, and will be found reported in 68 *Ga.*, 524.

LANIER & ANDERSON; WASHINGTON DESSAU, for plaintiffs in error.

JOHN RUTHERFORD; J. C. RUTHERFORD, for defendant.

HALL, Justice.

The question which controls this case is, whether the earnings of a married woman, who is not a free trader, and who is not living separate from her husband, constitute her separate estate or belong to her husband? When this case was here before, 68 *Ga.*, 524, we distinctly held that such earnings belonged to him. It does not occur to us that it can make any difference, in point of principle or law, whether she derives this income from keeping a boarding-house, or from washing, ironing or cooking. In this re-spect, there was no material difference in the evidence adduced on this and the former trial; it is the same in all substantial particulars, and falls directly within the princi-ple already settled and adjudicated by this court. On the last trial, it made the only issue that should have been submitted to the jury, and, in submitting the others by the charge excepted to in the motion for a new trial, we think our learned brother misapprehended the scope and purpose of the former adjudication of this court, and to that extent erred. There was no dispute as to the source from which the money came that was invested in the land in controversy; it came from the wife's earnings during coverture, while she was living with her husband, and when she was carrying on no separate business, as she might have done by complying with the law in reference to married women becoming "public or free traders." Code, §1760. Had she been living separate from her husband (Code, §1756), or been declared "a public or free trader," then, in either event, her acquisitions would have become her separate estate to which his marital rights could not have attached. The claim set up has been adjudged against her, and she is concluded by that judgment.

The money that purchased and paid for the property being the husband's, and he having bought it and taken bond for titles to it in his own name, no trust could be implied in her favor, and a party giving credit to him while he owned the property could not be charged with notice of a trust that existed neither in fact nor in law, although he may have directed and caused a deed to be made to her in conformity to a previous understanding between them, after the credit was given. The decision of the court in this case, if it needed vindication, is fully sustained by an able and exhaustive opinion of the Supreme Court of the United States, in which the authorities bearing on the subject are carefully examined and collated. 94 U. S. R., 580.

Judgment reversed.