GEORGIA RAILROAD AND BANKING CO. *v.* TICE *et al.*.

1. A petition which contains two distinct causes of action in favor of different plaintiffs against the same defendant is defective, but the defect may be cured by an amendment eliminating one of the plaintiffs and one of

the causes of action. Such a defect is one of form and not of substance, and must be taken advantage of by special demurrer filed at the first term.

2. When two causes of action against a defendant in favor of different plaintiffs are tried at one time, as a result of the failure of the defendant to raise the objection to the misjoinder of the causes of action at a proper time, and a verdict for one sum in favor of both plaintiffs is rendered, and no objection is raised, at the time the verdict is received, to the form in which the verdict is rendered, the irregularity in the form of the verdict is no sufficient reason for granting a new trial. The payment of the verdict as rendered to the parties jointly, or to their attorney of record, will discharge the defendant from liability to both of them on account of all matters alleged in the petition.

3. The rule in reference to the sequestration of witnesses does not apply to a witness who is a party to the case, even though there may be several parties on the same side who are all to be examined as witnesses.

4. The operation of a railroad by a lessee, in the absence of express statutory authority exempting the lessor from liability for the acts of the lessee, does not change the relation of the lessor company to the public; and the servants of the lessee company are, as to acts for which the lessor company may be held liable, in legal contemplation as much the servants of the lessor as of the lessee, and are therefore not competent to serve as jurors in an action by a passenger for damages against the lessor, based upon an injury received as a result of the negligence of the servants of the lessee company.

5. In the absence of any consent or agreement, either expressed or implied, on the part of the husband that the earnings of the wife shall be retained by her as her separate estate, they belong to him.

6. The damages that may be recovered by the husband for the loss of the services of his wife by reason of personal injuries are not confined to the value of her services in the household, but may include the value of her services rendered in her husband's business, where she was thus engaged at the time of the injury without any contract or expectation of pay for the same.

7. The charge of the court, when considered as a whole, was free from any substantial error of which the defendant was entitled to complain. The evidence authorized the verdict, and the discretion exercised by the trial judge in refusing a new trial will not be controlled.

Argued October 9,—Decided December 21, 1905.

Action for damages. Before Judge Eve. City court of Richmond county. January 16, 1905.

Mahala J. Tice and her husband, Charles Tice, jointly brought suit against the railroad company for injuries received by Mahala J. Tice while a passenger on a car operated on its railroad. The petition alleged, that she boarded the train at a regular station, and entered a car made up of two compartments, and the car started before she reached the apartment provided for ladies, and, just as she

reached the nearest vacant seat therein, a sudden jerk of the train threw her violently to the floor. In falling she struck an iron-bound drummer's sample case, which was leaning against the seat, injuring her leg and back, and received permanent injuries, for which she claims damages in the sum of $5,000. Charles J. Tice sues for the expense of doctors' bills, medicines, nursing, etc., to which he has been put, and for such future expenses as he will likely incur, and for the loss of her domestic services, as well as her services as a clerk in a business in which he was engaged at the time of her injury. At the trial term the defendant interposed a written demurrer and an oral motion to dismiss the case upon the ground that there was a misjoinder of causes of action. Each was over-ruled, and the defendant excepted. When the panel of jurors was presented, upon the request of plaintiff's counsel the court ascertained by inquiry that two of the jurors were employees of the operating company, a lessee of the defendant; whereupon the court ordered these two jurors to stand aside, and that their places be filled. To the propounding of the question, and the setting aside of the jurors, the defendant objected; and the objection being over-ruled, the defendant excepted. A verdict for the plaintiffs, of $5,000, was rendered. At the same term the defendant filed a motion in arrest of judgment, upon the ground that there was a misjoinder of causes of action. This motion and a motion for a new trial were overruled, and the defendant excepted.

*Joseph B. & Bryan Cumming* and *G. M. Beasley,* for plaintiff in error. *Henry C. Roney,* contra.

COBB, P. J. When a married woman is injured by the wrong-ful conduct of another, two different causes of action may arise: the one in her favor for her own pain and suffering, and the other in favor of the husband for the loss of his wife's services and for expenses incurred as a consequence of the injuries to her. These causes of action are separate and distinct, and in favor of different parties. Therefore they can not be properly joined in one suit. Civil Code, §§4938-4946. A petition by a husband and wife, which sets forth a cause of action in favor of the wife and one in favor of the husband, although both arise out of the same transaction, is subject to the objection that there is in such petition a misjoinder of causes of action. Can this defect be cured by amendment elimi-

nating one of the causes of action? The right to amend is exceedingly broad. Even where a cause of action is very defectively set forth and parties are joined either as plaintiffs or defendants who have no concern with the cause of action, the defect as to the manner in which the cause of action is set forth may be cured by amendment, and the unnecessary parties may be eliminated in the same way. When a petition sets forth two complete causes of action in favor of different parties but against the same defendant, there seems to be no good reason why an amendment should not be allowed striking therefrom one of the causes of action and one of the plaintiffs. The statute expressly authorizes the striking of a plaintiff improperly joined. Civil Code, §5105. If one of the plaintiffs can be eliminated by amendment, which would leave the petition standing in favor of the other plaintiff, we see no reason why the cause of action peculiar to the plaintiff stricken might not be eliminated at the same time. Of course, in such a case, it is for the two plaintiffs who have improperly joined their causes of action to determine between themselves which cause of action shall stand and which shall be eliminated. If, however, they do not voluntarily relieve the petition from the defect resulting from the misjoinder of the causes of action, upon objection raised at the proper time the defendant would be entitled to have the entire case dismissed. As a general rule, a defect in a petition which is amendable is cured by verdict. As under our system a misjoinder of causes of action could be eliminated before verdict by appropriate amendment, under the operation of the rule just referred to, such a defect, unobjected to at the proper time before verdict, would be cured by the verdict. The defect therefore must be taken advantage of before verdict; but at what stage of the cause? Is it a defect of form or a defect of substance? A petition might contain two causes of action in favor of different plaintiffs, each set forth with all the particularity and formality that could be required. In such a case there would be no defect of substance in the allegations of the petition, and the misjoinder of the two perfect and complete causes of action must therefore be merely a defect of form,—that is, a defect in the manner in which the different plaintiffs have seen fit to bring into court that which each would have had the right to bring in a separate suit. Being a defect merely in the form in which the suit is brought, it must be taken

advantage of by special demurrer filed at the first term, and the failure to file such demurrer at such term would be a waiver of the defect. See *Lippincott* v. *Behre,* 122 *Ga.* 546. We are aware that in the case of *Governor* v. *Hicks,* 12 *Ga.* 189, it was held that a misjoinder of improper parties plaintiff, as well as distinct causes of action, would be a good reason for dismissing the case on general demurrer, and for arresting the judgment after verdict. We are also aware that this decision is in accord with the rule at common law. But, we think, since that decision was rendered such radical changes have taken place in the practice and procedure in this State that under the existing law a misjoinder of causes of action between separate and distinct parties would only be ground for a special demurrer filed at the appearance term. The uniform procedure act of 1887 entirely obliterated the distinction between courts of law and courts of equity, so far as the form to be followed in bringing an action was concerned. The compilers of the Code of 1895 have merged into one general subject, dealing with petitions, demurrers, answers, etc., all that which prior to 1887 was dealt with in the code under the distinct heads of procedure at law and procedure in equity. The more liberal rules of the equity court have become in many respects a part of the procedure in all cases, whether the cause of action be legal or equitable. The code distinctly recognizes a misjoinder of parties or causes of action as a ground of demurrer in any case, and the same section in which this is recognized declares that special defects in the petition may always be taken advantage of by demurrer, "and unless cured by amendment the petition shall be dismissed." Civil Code, §5048. A court of equity looked with little favor upon a demurrer which raised the question that the bill was multifarious; and even in those cases where the court was compelled to hold that there was a misjoinder of causes of action, the complainant was generally allowed the right to amend his bill so as to eliminate one or the other of his grounds of complaint. See *Morgan* v. *Shepard,* 69 *Ga.* 308.

2. Error is assigned, in the motion for a new trial, upon the failure of the judge to instruct the jury, if they found in favor of the plaintiffs, to bring in a verdict for each plaintiff for a given amount, and also error is assigned upon the verdict upon the ground that it is for one sum, not specifying how much is found for the husband and how much for the wife, the manner in which the ver-

dict was rendered thus preventing the court from determining whether a proper or excessive amount had been allowed in each instance. The petition contains two causes of action in favor of different plaintiffs, and properly there should have been a verdict in favor of each plaintiff for a given amount. The judge charged the jury to return one amount to cover the claims of both plaintiffs. There is no assignment of error upon this part of the charge, but error is assigned upon the failure of the jury to find two separate amounts. There should have been a request for the judge to instruct the jury in reference to the form of the verdict rendered by them, or an objection at the time the verdict was received, and a request that the jury should retire and separate the amount found into two amounts, one for each party. There being no request during the progress of the trial for an instruction to the jury on the subject, and the record not showing that there was any objection to the verdict at the time it was rendered, and as a payment of the amount recovered by the plaintiffs to them or their counsel of record would completely protect the defendant from all liability to each of the plaintiffs on account of both of the causes of action set forth in the petition, the irregularity in the verdict is not sufficient to require the granting of a new trial. The fact that the defendant is by the form of the verdict precluded from entering into the question whether the amount really assessed by the jury to each of the plaintiffs might or might not be excessive as to one or the other was brought about at last by the failure to object to the form of verdict at the time it was rendered. The failure to raise, by special demurrer at the first term, an objection to the petition on account of the misjoinder of the two causes of action therein renders the entire trial one that is anomalous, and the failure to object to the verdict in the case only adds to the peculiarity of the situation first rendered anomalous by the failure to demur. The defendant lost the right to have the two cases tried separately, by failure to demur, and also lost the right to have a separate verdict rendered in favor of each plaintiff, by failure to object to its form when it was received.

3. At the request of counsel for each party all witnesses in the case were sequestered, and Mrs. Tice was called to the stand to testify. Counsel for the defendant asked that her husband be sequestered during the examination of Mrs. Tice. The court re-

fused the request, and this ruling is assigned as error. Tice was a. party to the cause on trial: He had a right to remain in court during the entire trial. The rule in reference to the sequestration of witnesses does not apply where the witness is a party, although there may be several parties on one side of the case.

4. It appears from the record that the defendant is a railroad corporation, but that it was not operating the cars at the time the plaintiff was injured, but the same were being operated by a lessee. The plaintiff's counsel requested the judge to inquire of the jurors: who had been empaneled to try the case, whether any of them were employees of the lessee company; and it appearing that two of the panel occupied this relation to the lessee company, the court required them to stand aside, and other jurors to be summoned. To the ruling holding that such jurors were incompetent the defendant excepted. It can not be laid down as a general rule that the servants of a lessee are disqualified from service as jurors in a case where the lessor is a party. But the relation existing between two railroad companies, brought about by a lease of one to the other, is different from the relation which exists between an ordinary lessor and lessee. A railroad company, in the absence of express legislative authority, can not exempt itself from liability for a failure on the part of its lessee, its servants and agents, to discharge the public duties required of those who operate railroad trains; and though a passenger may be injured by the negligence of the servants: of the lessee, he may still look to the lessor for compensation in damages. The servants of the lessee are therefore, as to duties: imposed upon the lessor concerning the responsibility which it can not throw off, the servants of the lessor. The operation of the road by the lessee does not change the relation of the original company to the public; for the servants in its employment in legal contemplation are as much the servants of the lessor as of the lessee. See *Singleton* v. *Southwestern Railroad*, 70 *Ga.* 469; *Central Railroad*. v. *Mitchell*, 63 *Ga.* 172. If such were not the rule, it would be possible for the question of the liability of the lessor company to be submitted to the determination of a jury composed of the very employees of the lessee who were charged with the wrongful acts bringing about the injury to the plaintiff. A trial before a jury thus made up would of course be a travesty upon justice.

5, 6. The petition alleged that Mrs. Tice, before her injury, was

"a strong, healthy woman, attending to all her own domestic duties, and by reason of his incapacity, because of his being infirm, she assisted him in his merchandise and other business, and by reason of her injury she is wholly unable to render him any service whatever." There was no demurrer other than the demurrer above referred to, upon the ground of misjoinder of causes of action. Mrs. Tice testified that her husband would be sick and often have to take to his bed, and then she would have to attend to the store for him, and often customers would want them to get things down town for them, and she would attend to those matters for her husband; that she collected for him, that she made purchases, and that in addition to attending to her domestic affairs at home she was really a clerk in the store. Charles Tice testified substantially to the same facts, and stated that the services which his wife rendered were worth at least $50 per month. The defendant objected to this testimony, on the ground that it is not in the contemplation of the law that a husband can recover for the value of services of the wife as a manager of a mercantile business for him. This objection was overruled, and the evidence was admitted. The court also refused a written request to charge the jury in the following language: "While a husband is entitled to recover the value of his wife's services, where another has negligently injured her, this means the usual services rendered by a wife in the household, and it does not embrace the value of her services in running a mercantile business, going out drumming for business, and purchasing and collecting for the mercantile business." The question presented by the objection to this evidence and by the refusal of the request is whether in an action of the character now under consideration the husband can recover for the loss of the services of the wife other than such services as are rendered by the wife to the husband as a legal consequence of the marriage relation.

Prior to the enactment of the married women's act of 1866, the earnings of the wife belonged to the husband, unless they were living separate and apart, or she had been declared a free trader in conformity to law, or unless the husband expressly relinquished his right to such earnings in her favor. *Oglesby* v. *Hall,* 30 *Ga.* 386; *Cavanaugh* v. *Ainchbacker,* 36 *Ga.* 500; *Gorman* v. *Wood,* 73 *Ga.* 307; *Wood* v. *Wilson Sewing Machine Co.,* 76 *Ga.* 104. In *Dumas* v. *Neal,* 51 *Ga.* 566, Judge McCay expressed a doubt as to whether

a wife was entitled to compensation from her husband for services rendered for keeping a boarding-house.   This case involved services rendered both before and after the act of 1866.   In the opinion Judge McCay said: "It was her duty to her husband while she lived with him to do these things.   She is not to be a drone in the hive."   In *Sasser* v. *Sasser*, 73 *Ga.* 276, Mr. Justice Hall intimated that while the husband was, notwithstanding the act of 1866, still entitled to the domestic services of his wife, her earnings resulting from labor performed in other ways were her own, saying, however,. that his remarks were made out of abundant caution and solely for the reason that he did not desire at that time to be committed, even by implication, to a contrary view.   In *Eichberg* v. *Brandon,* 74 *Ga.* 834, it was held that where a married woman living with her husband owned a separate estate which consisted in part of a house and lot where they resided, and carried on therein the business of keeping a boarding-house since 1866, her earnings in that enterprise belonged to her, and she could bring suit for the same in her own name.   While it does not appear from the headnote, it does appear from the reporter's statement, that she engaged in this business with the husband's consent, and with the agreement on his part that she might have the proceeds resulting from such business.   In *Brunswick Light Co.* v. *Gale,* 91 *Ga.* 813, which was an action by a husband and wife for personal injuries to the wife, it was held that "inasmuch as the earnings of a wife belonged to her husband, her individual and personal damages could be measured only by the enlightened consciences of impartial jurors."   In the opinion Mr. Justice Simmons said, "But where, as in this case, a married woman sues for physical injuries and the pain and suffering resulting therefrom, and can not recover for loss of earnings, medical attention, etc., the principle of the section [Code of 1882, § 3067; Civil Code, § 3907] is applicable, inasmuch as her damages can be measured only by the enlightened conscience of an impartial jury."   This was a distinct ruling that since the act of 1866 the husband was entitled to the earnings of the wife, in the absence of evidence showing his consent to the appropriation of her earnings to her own use, or that she was living separate from him.   In *Lee* v. *Savannah Guano Co.,* 99 *Ga.* 572, Mr. Justice Lumpkin said that the earnings of the wife are "oftentimes exclusively her own, certainly so when her husband expressly consents to her engaging in

the occupation or business from which they arise." In *Sams* v.
*Thompson Hiles Co.,* 110 *Ga.* 648, while the language in the opinion is very broad, still, in the light of the facts, the ruling there is simply to the extent that the wife is entitled to her own earnings when her husband consents that she should receive the same. In *Roberts* v. *Haines,* 112 *Ga.* 842, it was held that "in the absence of any consent or agreement, either express or implied, on the part of a husband, that the earnings of his wife shall be retained by her as her separate estate, they belong to him." Mr. Justice Lewis in the opinion said, "While it is true that the act of 1866 has wrought many changes in the law with reference to the separate estate of a married woman, there is still imposed upon the husband the obligation to support his wife, with the corresponding right to her services and earnings during coverture." Mr. Justice Lewis remarked that this principle is recognized in *Brunswick Light Co.* v. *Gale,* supra. See also cases cited in 7 Enc. Dig. Ga. Rep. 132 et seq.

It must be treated, then, as the settled law of this State, that, even since the act of 1866, where a husband and wife are living together, the husband is entitled to her earnings, unless he consents that she may receive them as her own. If a wife who is living with her husband, and is engaged in a business or avocation from which earnings result, receives an injury at the hands of a wrong-doer which incapacitates her, either in whole or in part, from performing the work of such business or avocation, she is not entitled to recover on account of the loss thus occasioned, unless the husband has given his consent to her engaging in this business and receiving her earnings therefrom as her own. If the husband did not consent, and the wife is therefore not entitled to recover, and the husband should not be allowed to recover, the wrong-doer would be under a legal obligation to compensate no one on account of his tortious act. There are instances, probably many of them, where the wife has a peculiar talent which if exercised results in large earnings, and she is willingly exercising this talent and allowing her husband to receive the benefit by appropriating the earnings. It certainly can not be the law that in such a case the wrong-doer whose act entirely destroys the power of the wife to exercise the talent would be liable to no one for such damages resulting from his conduct. Such an injury to such a wife results in damages to somebody, which must be compensated in money; and if the wife

is not allowed to recover, the husband should be. But it is said that in such a case the wife is under no legal obligation to use her talent for the benefit of her husband. Let this be granted. At the time of the injury she was using it, and it was lawful for her to do so, and it does not lie in the mouth of a wrong-doer to say that a wife actually engaged in a business or avocation which results in earnings to the husband may at some time in the future decline to further engage in such occupation. We do not think that merely because a wife can earn money for her husband by engaging in business he would be entitled to recover from a wrong-doer; but when at the time of the injury she is actually engaged in a business or calling or avocation which results in earnings for the husband, and there is nothing to indicate that there was any agreement between the husband and wife that this should terminate at any time in the future, we think that as against a wrong-doer the inference is to be indulged that the wife will continue the work for the benefit of her husband during that period of her life in which she is able to perform the services. While in the case of *Metropolitan St. R. Co.* v. *Johnson*, 91 *Ga.* 466, the services rendered were those of an ordinary domestic nature, the language is very broad. While the ruling is authoritative only as to domestic services, the reasoning in the opinion is of such a character as to support a right to recover for earnings of any character that were actually being made by the wife at the time she suffered the injury. Mr. Sutherland in his work on Damages says: "If she is voluntarily rendering services for her husband by carrying on his business, he is entitled to recover for the loss of her services therein if the facts are properly alleged." 4 Suth. Dam. (3d ed.) §1252. The authority cited by this author to sustain this proposition is the case of Citizens St. Ry. v. Twiname, 121 Ind. 375 (23 N. E. 159, 7 L. R. A. 352). It was there held that damages for the loss of services of plaintiff's wife by reason of personal injuries are not confined to her services within the household, but may include the value of her services as manager of her husband's business, where she was engaged at the time of the injury without any contract to pay for such services. This was held notwithstanding a statute of Indiana, which declared that the earnings and profits of a married woman accruing from a trade or business, or her services or labor, other than those for her husband and family, shall be her

sole and separate estate.   The husband there was engaged in a milli-nery business, and his wife, by reason of their marital relations, devoted her energy and services to the business for the benefit of her husband, without any contract or expectation of pay.   In the opinion, Olds, J., says: "There might be circumstances existing which would entitle the wife, in an action for damages, to recover for the value of her own services, but prima facie the husband is entitled to recover for the value of such services; and especially is this true when the wife is not engaged in carrying on any business or trade on her own account, or performing labor for persons other than her husband, and, on the contrary, is voluntarily rendering service for the benefit of the husband; and he is entitled to recover for one class as well as another.   In other words, the husband is entitled to recover for the damages sustained on account of the loss of the services of the wife; and the value of her services, and loss sustained by reason of her inability to perform them, must neces-sarily depend on the character and value of the services which she is capable to perform, and is accustomed to perform for her hus-band."   There was a ruling to the same effect in Blair *v.* Chicago R. Co., 89 Mo. 334, 1 S. W. 367.   See also, in this connection, Hol-combe *v.* Harris, 166 N. Y. 257, 59 N. E. 820.   In case of an in-jury resulting in disability which would prevent the wife from ren-dering domestic services which the wife is legally bound to render, the husband may recover for the loss of such services even though such services had not been performed in the past, and the husband had never realized anything from the wife's services before she was injured.   4 Suth. Dam. (3d ed.) §1252.   In regard to those serv-ices which the wife is not legally bound to render, but which she is capable of rendering and which she is actually rendering at the time of the injury, the husband is also entitled to recover.   There was no error in admitting the evidence, nor in refusing to charge as requested.

7. There is only one other special assignment of error which need be referred to.   It is alleged that the court erred in charging the jury: "that the declaration sets out the claims of the plaintiffs, and states the grounds of negligence of the railroad company.   If the evidence sustains any or all of the grounds, the plaintiffs would be entitled to recover."   It is contended that as one of the allegations of negligence was that the defendant was negligent "in starting the

train of cars before she had opportunity to reach her seat and be seated," the effect of the charge would be to render the defendant liable merely because the cars started before the plaintiff had an opportunity to reach her seat; and that this might or might not be negligence, according to the circumstances of the case. By reference to the charge it appears that, immediately following the language quoted in the assignment of error, the court added, "if you think that the railroad company was not in the exercise of extraordinary care and diligence." This qualification relieves the extract complained of from any error. The effect of the charge with the qualification was to inform the jury that the plaintiff could recover upon the allegation that the defendant was negligent in starting the train of cars before she had opportunity to reach her seat and be seated, provided that at the time of the injury the defendant was not in the exercise of extraordinary care and diligence. When the charge is considered as a whole, we do not think there is anything therein calculated to impress the jury with the fact that the mere starting of the train before the plaintiff reached her seat could be used as a basis for recovery, but if the train was started in a negligent manner, and as a result of such negligence the plaintiff was injured before she reached her seat, then the plaintiff would be entitled to recover. Such is the claim of the plaintiff when her petition is considered as a whole, and such is the effect of the charge when it is considered in a like manner.

It was further contended that the charge was erroneous because it in effect instructed the jury as to what was negligence. We do not think it was subject to this criticism.

Of course we can not tell how much the jury allowed the wife for pain and suffering, and how much was allowed the husband for loss of services. But the evidence was of such a character that the aggregate sum of $5,000 for both items was not excessive. The evidence as to the negligence of the defendant was conflicting, but there was evidence upon which the jury could base a finding in favor of the plaintiff. The discretion of the trial judge, exercised in refusing a new trial, will not be controlled.

　　　　　*Judgment affirmed. All the Justices concur.*