### SAINT PAUL FIRE AND MARINE INSURANCE COMPANY *et al. v.* BRUNSWICK GROCERY COMPANY.

1. One who filed a claim to a fund in the hands of a garnishee and who dissolved the garnishment was a party to the issue formed by the plaintiff's traverse of the garnishee's answer, and upon the trial of such an issue it was erroneous for the court, in acting upon a motion of the plaintiff to separate the garnishee's witnesses, to exclude the claimant, over her objection, from the court-room during the trial.
2. Admissions made by a party to a case on trial, in pleadings filed by such party in previous litigation with others, are, if relevant to the issues in the case being tried, admissible in evidence.
3. An assignment of a policy of fire-insurance must be in writing.
4. Where a husband conveys property to his wife for the purpose of defrauding his creditors, and she subsequently has the same insured for her own benefit, and a loss covered by the policy occurs, the insurance company, if in any event liable to the husband for such loss, certainly is not if it issued its policy in ignorance of the fraudulent transaction between him and his wife, and hence can not, in such a case, be by garnishment made liable to his creditors.

Argued May 8,— Decided July 18, 1901.

Garnishment. Before Judge Sparks. City court of Brunswick. October 13, 1900.

The Brunswick Grocery Company obtained a judgment against L. M. Russell, and had summons of garnishment served upon the Saint Paul Fire and Marine Insurance Company. Subsequently to the service of the summons of garnishment, the wife of the defendant, whose initials were the same as those of her husband, claimed the fund in the hands of the garnishee, and dissolved the garnishment in accordance with the statute. After such dissolution the insurance company filed its answer, denying any indebtedness to the defendant, which was traversed by the plaintiff. Upon the

trial a verdict was rendered in favor of the traverse. The garnishee and the claimant made a motion for a new trial, which being overruled, they excepted. It appeared upon the trial that L. M. Russell, the husband, opened a grocery business at the corner of Monk and Oglethorpe streets in the city of Brunswick, in October, 1896. There was introduced in evidence a bill of sale to the stock of groceries, absolute upon its face, made by the husband to the wife, dated October 20, 1896, purporting to have been made in consideration of $425 paid by her to him, and to be attested by one Currie and by Anderson, a notary public. Anderson testified that the paper was signed, or acknowledged, before him January 9, 1898; that he had no recollection as to the matter, but that he kept a book of his official entries, and such book showed that he attested the paper upon that date; that he supposed Currie, the other witness, was present; that he would hardly have signed it if Currie had not been present. The husband and wife testified that the bill of sale was not taken to Anderson to be attested by him until after it was executed; that it was executed and delivered to her on the day that it bears date; that it was made to secure her for $425 of her separate estate which was loaned by her to him and used by him in paying for goods purchased by him for use in his business, and that no part of the loan had ever been paid to her. The husband testified that he took the bill of sale to Anderson, the notary public, on January 9, 1898, to have it attested officially, in order that it might be recorded. On March 20, 1897, the Saint Paul Fire and Marine Insurance Company, the garnishee, issued a policy of fire-insurance for $500, to continue one year, on the stock of goods at the corner of Monk and Oglethorpe streets, to "L. M. Russell." The husband and wife testified that this policy was taken out for her as additional security for the loan she had made him, that she told him to take it out for her, and that he delivered it to her immediately after it was issued. According to the evidence, the first time anything was said to the agent who issued the policy, in regard to the wife's interest in the insurance, was in January, 1898, about two or three weeks before the fire. This was when the husband went to the agent to have an indorsement made on the policy as to the removal of the goods to a different store from the one mentioned in the policy. The agent testified that the husband then said he wanted the policy put in his wife's

name, as he owed her some money, that the goods were hers, as he had turned them over to her to secure a debt he owed her, and that he, the agent, on ascertaining that the initials of the wife were the same as those of the husband, informed him that he did not think it necessary to make any indorsement on the policy other than the one as to the removal of the goods. The date of the indorsement for removal was January 15, 1898. As to this matter, the husband testified: "The L. M. Russell mentioned in that policy of insurance is Mrs. L. M. Russell; it was taken out for her, and it has always been hers. I have never had any interest in it at all, and have never had any interest in the $500, the proceeds. . . He [the insurance agent] said he could change the policy from one building to the other. . . When I carried the policy to [him] to have the transfer put on it, I spoke to him about it being L. M. Russell, when it should be Mrs. L. M. Russell. Then he said, that is all right, your initials are the same; he said, at any rate I will fix that all right on the books; and I left the policy with him there a week. When I got it back he told me the policy was in Mrs. Russell's name." The grocery business was carried on by the husband in his own name. Plaintiff's judgment was founded on a debt for goods bought by the husband from the plaintiff for use in the business mentioned. Plaintiff had no notice that the wife claimed any interest in the stock of goods or in the policy of insurance until after the goods were destroyed by fire.

*Owens Johnson* and *Alvan D. Gale*, for plaintiffs in error.
*Krauss & Franklin*, contra.

FISH, J. Notwithstanding the fact that, upon the dissolution of the garnishment by the claimant, the garnishee, upon the filing of its answer, was, by operation of law, discharged from all further liability (Civil Code, § 4721), and was therefore not interested in the determination of the issue made by the traverse of its answer, it appears from the record that upon the trial of the case the garnishee assumed the position of the real party at issue with the plaintiff, and the case was tried on that theory. Mrs. Russell, the claimant, who was the real party at issue with the plaintiff, appears to have taken no part as such in the trial, save to object to being sent from the court-room upon motion of the plaintiff to separate the garnishee's witnesses. The garnishee made her a party movant in its

motion for a new trial, and they both excepted to the overruling of the same. As the court below and the attorneys of the real parties at interest treated the garnishee as a party to the issue made, and as the trial was had upon that understanding, we will consider the case on the same line.

1. One ground of the motion for a new trial was, that, upon plaintiff's motion to separate the witnesses for the garnishee, Mrs. Russell, the claimant, was placed under the rule by the court, and, over her objection, was excluded from the court-room during the progress of the trial, except while she was testifying as a witness. As she was in fact a party to the issue on trial, it was her right to be present; and it was, therefore, manifestly erroneous to exclude her from the court-room.

2. Complaint was made in the motion for a new trial, "because the court, over the objection of the garnishee's counsel, admitted in evidence a certified copy of an answer filed by the St. Paul Fire & Marine Insurance Company in the case of Mrs. L. M. Russell vs. said insurance company in the city court of Brunswick," in which answer the insurance company set up that the policy of insurance sued on was issued to Mr. L. M. Russell and not to Mrs. L. M. Russell, and that she had no right of action on it. Movants further complained "because the court, over the objection of garnishee's counsel, admitted in evidence" certified copies of the answers of the St. Paul Fire & Marine Insurance Company to summonses of garnishment served upon it in the cases of Currie against Mr. L. M. Russell and the Savannah Wooden Ware Co. against Mr. L. M. Russell, in which answers it was admitted that the insurance company had issued to Mr. L. M. Russell an insurance policy for $500 on groceries and store fixtures, that they had been destroyed by fire, and that Mr. Russell was making a claim for the loss. It appears that the garnishee alone objected to the introduction of this evidence, and upon the grounds that the answer to the suit was inadmissible because the declaration was not offered with the answer, and that the answers to the garnishments were not admissible because there was no evidence that the suits mentioned therein were ever instituted, and because all this evidence was immaterial. There was no merit in these objections. The evidence was relevant and admissible against the garnishee, as admissions made in its pleadings in other litigation, and it was not necessary to introduce the other pleadings

therein. If the claimant, Mrs. Russell, had objected to this evidence, there would have been no question as to its inadmissibility as against her.

3. Another ground of the motion for a new trial was, that the court erred in instructing the jury that if the policy of insurance was issued to the husband, it could not be assigned to the wife except in writing. There was no error in this charge. The Civil Code, § 2089, requires that a contract of fire-insurance must be in writing. As an assignment of an insurance policy with the assent of the company is a new contract of insurance between it and the assignee, it must, under the provisions of this section of the code, be in writing. If the garnishee in this case issued the policy of insurance to L. M. Russell, the husband, and he, desiring to assign it to his wife, whose initials were the same as his own, had the agent of the garnishee to enter into a parol agreement that, as the policy was issued to " L. M. Russell," such name in the policy should thenceforth stand for the wife and that she should be considered as the assignee of the policy, such agreement would not be a good assignment.

4. Error is assigned in the motion, because the court in its charge to the jury read paragraphs 1 and 2 of section 2695 of the Civil Code, which provide that fraudulent assignments by debtors shall be void as to creditors, and also read section 3533 (Ib.), in reference to fraudulent misrepresentations avoiding a sale, and section 4025 (Ib.), defining actual and constructive fraud, and instructed the jury that if they believed from the evidence that the bill of sale from Russell to his wife was collusive and fraudulent, they should find in favor of the traverse. As there was no contention that the husband in conveying the goods to his wife practiced any fraud upon her, the charge as to the provisions of the last two sections referred to was wholly inappropriate. It was also erroneous to instruct the jury in reference to the law of fraudulent conveyances as set out in the first two paragraphs of section 2695. Even if the bill of sale from the husband to the wife was fraudulent, and therefore void, as to his creditors, it was nevertheless valid as between him and her. *Parrott* v. *Baker*, 82 *Ga.* 364; *Tufts* v. *Du-Bignon*, 61 *Ga.* 322; *McDowell* v. *McMurria*, 107 *Ga.* 812; *Flannery* v. *Coleman*, 112 *Ga.* 648. If the insurance company, subsequently to the execution of the bill of sale, entered into a contract

with the wife, whereby it insured the goods for her and agreed to pay the loss, if any, to her, the husband, after such loss, could not require the company to pay him for the loss, because the company had made no contract with him, and was, therefore, not indebted to him. This would seem to be so even if the company issued the policy with knowledge of the fraud, as to the husband's creditors, characterizing the transaction between him and his wife; and is certainly so, if, as was apparently true in the present instance, the company issued the policy in ignorance of any such fraud. If the husband could not hold the company liable, neither could his creditors; for it is well settled that creditors can not reach by garnishment assets which their debtor could not recover from the garnishee. Bates v. Forsyth, 69 Ga. 365 (b); Tim v. Franklin, 87 Ga. 95. The insurance company made no objection to paying the wife, but, on the contrary, contended that the policy was issued to her and that she was entitled to payment thereon for the loss occasioned by the destruction of the goods by fire.

There are numerous other grounds in the motion for a new trial, but it is unnecessary to deal with them specifically, as the rulings made sufficiently indicate the line upon which the case should be tried when it comes up again in the court below.

*Judgment reversed. All the Justices concurring.*