S11G0590. KESTERSON et al. v. JARRETT et al.
(728 SE2d 557)

NAHMIAS, Justice.

Under the longstanding law of Georgia, the parties to a lawsuit have a fundamental right to be present in court during the trial of their case. The issue presented in this appeal is whether a party may be denied that right and excluded from the courtroom because her

physical and mental condition may evoke undue sympathy from the jury and thereby improperly prejudice the other party. This appears to be a question of first impression for Georgia's appellate courts, likely because exclusion of a party from trial for this reason is such an exceptional event in this State. In this case, however, the trial court excluded Appellant Kyla Kesterson, a young child with severe cerebral palsy, from most of the liability phase of the trial of her and her parents' lawsuit alleging that her condition was caused by Appellees' medical malpractice.

The Court of Appeals affirmed that ruling, adopting a test used by the United States Court of Appeals for the Sixth Circuit, which gives the trial court discretion to exclude a civil party when the party's physical and mental condition may generate jury sympathy and her mental condition precludes her from meaningfully participating in and understanding the proceedings. See *Kesterson v. Jarrett*, 307 Ga. App. 244, 250 (704 SE2d 878) (2010) (citing *Helminski v. Ayerst Labs.*, 766 F2d 208, 218 (6th Cir. 1985)). We conclude, however, that a party may not be excluded from her own trial simply because her physical and mental condition may evoke sympathy, even under these circumstances. Instead, trial courts can and should address the risk of undue sympathy using jury instructions and other common and time-tested means of ensuring that both parties receive a fair trial, without infringing on the parties' right to be present. Accordingly, we reverse.

1. The Court of Appeals accurately described Kyla's condition and the issues raised by the parties:

Kyla was born with very low "Apgar scores," a gross assessment of the infant's medical condition at specific intervals after birth. Within a day of her delivery, Kyla had a brain ultrasound and CT scan, neither of which revealed any injury. A week later, an MRI of Kyla's brain revealed damage to parts of the brain that control motor function. Kyla was eventually diagnosed with spastic quadriplegia, a form of cerebral palsy. As a result of this condition, Kyla is unable to control her movements and is confined to a special wheelchair, she has a feeding tube inserted into her stomach, her airway must be suctioned several times a day, she has bladder and bowel dysfunction, she suffers frequent seizures, she has severely limited cognitive function, and she cannot speak.

The Kestersons contended at trial that Kyla's neurological injuries occurred when she was deprived of oxygen just prior to birth. They argued that [Appellees Walter

Jarrett, M.D., Athens Obstetrics and Gynecology, P.C., and St. Mary's Healthcare System, Inc. d/b/a St. Mary's Hospital] were negligent in failing to timely recognize the signs of fetal distress and that if Jarrett had performed a Caesarean section earlier, Kyla would not have been injured. The defendants argued that their actions did not fall below the standard of care, that an earlier Caesarian section was not medically indicated, and that Kyla's cerebral palsy may have resulted from something other than an event that occurred during delivery.

*Kesterson*, 307 Ga. App. at 245.

After the trial court ordered the bifurcation of the liability and damages issues, Appellees moved to exclude Kyla from the courtroom during the liability phase of the trial, arguing that her presence would be prejudicial to Appellees, she could not meaningfully participate in the trial, and her parents could adequately represent her interests. Appellees did not contend that Kyla should be excluded from the damages phase of the trial. Appellants responded that they did not intend for Kyla to be in the courtroom for any lengthy period, but that she had a constitutional right to be present in court.

The trial court's written order on Appellees' motion stated that Kyla would be allowed

in the courtroom at the time of the call of the case for trial immediately prior to voir dire of the jury panel. After introduction of [Kyla] to the jury panel, the child's presence during the liability phase of the trial shall not be allowed until the Court, outside of the jury's presence, determines that the presence of such child is essential and relevant to witness testimony related to medical conditions affecting said child which resulted from alleged negligent acts by one or more Defendants. The Court shall allow the presence of [Kyla] in the courtroom during the damages phase of the trial, if reached, during those periods of time that her presence is needed with respect to the issue of Plaintiffs' claim for damages. However, the Court reserves the right to remove [Kyla] from the courtroom at any time the Court perceives that her actions are distracting or disruptive to the proceedings or otherwise result in potential prejudice to one or more of the Defendants.

During the liability trial, the trial court twice denied the Kestersons' request to bring Kyla into the courtroom but granted one

such request. See *Kesterson*, 307 Ga. App. at 247. In denying one request, the trial court said that it was doing so "out of a concern that [Kyla's] presence . . . may have an undue prejudicial impact on the jury as to the liability issue" and because she could not meaningfully participate in and comprehend the proceedings. On the one occasion that Kyla was allowed to appear, during the cross-examination of a defense medical expert, she was in the courtroom for testimony that covers just over one page of the over 4,600-page transcript. The jury returned a verdict in favor of Appellees on liability.

On appeal, the Kestersons contended that the trial court erred in limiting Kyla's presence in the courtroom. Finding no Georgia case directly addressing the issue, the Court of Appeals adopted the test set forth by the Sixth Circuit in *Helminski*, 766 F2d at 218, with some procedural additions. See *Kesterson*, 307 Ga. App. at 248-250. The Court of Appeals held that

> a trial court has the discretion to limit a severely injured plaintiff's presence during the liability phase of a bifurcated trial when, after an evidentiary hearing upon a written motion and after an opportunity to observe the plaintiff, the court makes the following factual findings in a written order: (1) the plaintiff is severely injured; (2) the plaintiff attributes those injuries to the conduct of the defendant(s); (3) there is a substantial likelihood that the plaintiff's presence in the courtroom will cause the jury to be biased toward the plaintiff based on sympathy rather than the evidence such that the jury would be prevented or substantially impaired from performing its duty; (4) the plaintiff is unable to communicate with counsel or to participate in the trial in any meaningful way; and (5) the plaintiff is unable to comprehend the proceedings. When all of those circumstances exist, the plaintiff's presence is not truly an exercise of his or her right to be present, because the plaintiff is incapable of making such a conscious choice. As in this case, the plaintiff functions almost as an exhibit, as a piece of evidence.

*Kesterson*, 307 Ga. App. at 250.

The Court of Appeals concluded that the trial court had made all but the third finding of this test, noting that "[i]t did not make an explicit finding in its order or elsewhere on the record that there is a substantial likelihood that Kyla's presence in the courtroom would cause the jury to be biased toward her based on sympathy rather than

the evidence." Id. at 250. However, the Court of Appeals deemed this error harmless and affirmed the trial court's judgment. See id. at 251.

We granted Appellants' petition for certiorari.

2. (a) The right of a natural party to be present in the courtroom when her case is being tried is deeply rooted in the law of this nation and, if anything, even more embedded in the law of this State.[1] It has been treated as a component of the due process of law in both criminal and civil cases since the early decisions of this Court. See *Wade v. State,* 12 Ga. 25, 29 (1852) (holding that a criminal defendant has "the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court"); *Tift v. Jones,* 52 Ga. 538, 542 (1874) (explaining that a civil litigant has a "right to be present in the court during the whole trial of his case"). See also *Hampton v. State,* 282 Ga. 490, 492 (651 SE2d 698) (2007) (holding that a criminal defendant has a fundamental right to be present in court under the due process clause of the Georgia Constitution); *Helminski,* 766 F2d at 213 (holding that, as a matter of federal constitutional law, the right to be present is appropriately analyzed as an aspect of due process in civil cases).

The right to be present is also reflected textually in our State Constitution, in the provision guaranteeing to every person "the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state." Ga. Const. of 1983, Art. I, Sec. I, Par. XII. See *Smith v. Baptiste,* 287 Ga. 23, 24-27 (694 SE2d 83) (2010) (reaffirming that Paragraph XII establishes a right to choose self-representation). A similar provision was included in our first Constitution, see Ga. Const. of 1777, Art. 58, and it has been included in every Constitution since 1877. See *Smith v. Baptiste,* 287 Ga. at 33-35 (Nahmias, J., concurring specially) (tracing the constitutional history of this provision); *Nelms v. Georgian Manor Condo. Assn.,* 253 Ga. 410, 413 (321 SE2d 330) (1984) (same).[2]

---

[1] We note that the cases discussed in our opinion have all involved parties who are natural persons. Our decision therefore does not address the rights of corporate, governmental, and other such entities. See *Eckles v. Atlanta Tech. Group,* 267 Ga. 801, 805-806 (485 SE2d 22) (1997) (holding that a corporation must be represented in a court of record by licensed counsel). Likewise, our opinion today deals with the exclusion of a party from proceedings with the jury at trial, which is at the core of the right to be present. Where parties are represented by counsel, they have not traditionally had a right to be present, for example, during pre-trial, trial, and post-trial proceedings involving only legal arguments. See, e.g., *Parks v. State,* 275 Ga. 320, 325 (565 SE2d 447) (2002) (bench conferences on legal issues); *Huff v. State,* 274 Ga. 110, 111-112 (549 SE2d 370) (2001) (jury charge conference and discussions in chambers discussing legal matters).

[2] The 1983 Constitution revised the prior version of Paragraph XII slightly to clarify that a person is not entitled to "hybrid" representation, with the party actively participating in trial as co-counsel with a lawyer, which can lead to confusion. See *Nelms,* 253 Ga. at 413 & n. 7. But

The right of parties to be present in court when their causes are heard is undoubtedly strong as a matter of federal law. See *Hampton*, 282 Ga. at 491-492 ("The United States Supreme Court has long recognized that a criminal defendant's right to be present at all critical stages of the proceedings against him is a fundamental right and a foundational aspect of due process of law."); *Helminski*, 766 F2d at 213-217 (canvassing federal cases and holding that a civil litigant has a due process right to be present during trial, although not an absolute right). But the even greater respect given this right in our State's legal tradition is reflected in the fact that the textual right to prosecute or defend one's case in court applies to civil as well as criminal cases. See *Smith v. Baptiste*, 287 Ga. at 34 (Nahmias, J., concurring specially) (discussing the express recognition in early state constitutions, including the 1777 Georgia Constitution, of a right to choose self-representation in both criminal and civil cases, long before the U.S. Supreme Court recognized it as an aspect of federal due process in criminal cases and even though the right to self-representation is protected in federal civil cases only by statute). Moreover, unlike federal law, under Georgia law the right to be present for all critical stages of criminal proceedings has been deemed so fundamental that a violation properly raised on direct appeal from a conviction is presumed to be prejudicial, requiring a new trial. See *Ward*, 288 Ga. at 646-647. Compare *Rushen v. Spain*, 464 U. S. 114, 117-118 (104 SC 453, 78 LE2d 267) (1983) (holding that the denial of a criminal defendant's right to be present is subject to harmless error analysis under federal law).

(b) Like most other rights, the right to be present may be waived or forfeited by a party. A party may choose not to attend all or part of her trial, see *Hill v. State*, 290 Ga. 493, 494 (722 SE2d 708) (2012), or affirmatively waive presence during all or part of a proceeding, see *Ward*, 288 Ga. at 646. But because the right to be present in court is held by the party, the decision not to attend, or to waive attendance, must be made by the party, not by her lawyer alone.

> "The right [to be present] is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver."

Id. (citation omitted).

---

this change did not alter the fundamental right of parties to appear in court if they so choose. See *Ward v. State*, 288 Ga. 641, 645 (706 SE2d 430) (2011) (citing Paragraph XII as embodying the right of a criminal defendant to be present at trial).

Going back to our 1874 decision in *Tift v. Jones*, we have also upheld the discretion of trial courts to reconcile the right to be present in court with the venerable rule of sequestration of witnesses by requiring a party who plans to testify in a civil case to choose between testifying first or leaving the courtroom until the time that she testifies. See 52 Ga. at 542. Accord *Barber v. Barber*, 257 Ga. 488, 488 (360 SE2d 574) (1987). But we have also held that a trial court cannot simply sequester a party from a civil proceeding, without according the party that option. See *Ga. R. Co. v. Tice*, 124 Ga. 459, 464-465 (52 SE 916) (1905); *St. Paul Fire & Marine Ins. Co. v. Brunswick Grocery Co.*, 113 Ga. 786, 789 (39 SE 483) (1901).[3]

A party may also forfeit the right to be in court by disrupting " 'the decorum and respect inherent in the concept of courts and judicial proceedings,' " although trial courts must use care in excluding a party for this reason and the right to be present may be reclaimed if the party becomes willing and able to be non-disruptive. See *Weaver v. State*, 288 Ga. 540, 542-543 (705 SE2d 627) (2011) (citation omitted). In this case, there was some discussion before trial of the potential for Kyla's condition, and the ways in which it may manifest itself and require others to respond to it, to disrupt the proceedings. The trial court order therefore "reserve[d] the right to remove [Kyla] from the courtroom at any time the Court perceives that her actions are distracting or disruptive to the proceedings." The trial court would have been within its well-established authority to remove Kyla from the courtroom if she substantially disrupted the proceedings — but that is not the ground on which the court relied for excluding her or the ground the Court of Appeals cited in upholding her exclusion.

(c) Instead, Kyla was excluded from most of the trial of her case because of concern that her physical and mental condition would cause the jury to be biased — unduly sympathetic toward her. The trial court was right to be concerned about jury sympathy. All of the parties in a case are entitled to a fair trial, and one element of a fair trial is that decisions by the jury and the judge be based solely on the evidence and the law, and not on bias — sympathy for or prejudice

---

[3] The new Georgia Evidence Code provides that the rule of sequestration "shall not authorize exclusion of . . . [a] party who is a natural person." OCGA § 24-6-615 (effective Jan. 1, 2013). The Reporter for the State Bar of Georgia's Evidence Study Committee, which urged the adoption of the evidence code, says that § 24-6-615 "prohibits sequestration of a party, but the trial court still has discretion under new Georgia Code Section 24-6-611 (a) to require that a party testify before other witnesses," consistent with current practice. Paul S. Milich, *Georgia's New Evidence Code – An Overview*, 28 Ga. St. U.L. Rev. 379, 404-405 (2012). This issue need not be decided in this case.

against one party or the other that is not based solely on the evidence. See *Smith v. Phillips*, 455 U. S. 209, 217 (102 SC 940, 71 LE2d 78) (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."); *Alabama G. S. R. Co. v. Brown*, 140 Ga. 792, 795 (79 SE 1113) (1913) ("The courts will see to it that the jury are kept free from influences which may tend to bias or prejudice their minds for or against the cause of either party they are empaneled to try.").

But concern about inappropriate jury sympathy is not unusual in litigation, particularly in tort cases, where the plaintiffs often allege that the defendants caused serious injuries or death, and criminal cases, where the defendants are often similarly alleged to have caused serious injury or death to individual victims or serious harm to the entire community. In our legal tradition, however, this concern is not resolved by excluding parties from the proceedings. Instead, the risk of improper sympathy is addressed as are other concerns about the jury deciding the case on an improper ground.

Venue may be changed. See, e.g., OCGA § 9-10-50 (a) (providing that if, as a result of voir dire, "the presiding judge is satisfied that an impartial jury cannot be obtained in the county where any civil case is pending, the civil case may be transferred to any county that may be agreed upon by the parties or their counsel"). Questions may be asked in voir dire and prospective jurors excused for cause or peremptorily. See, e.g., *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002) (explaining that a trial judge's " 'primary duty . . . is to ensure the selection of a fair and impartial jury' " and "trial courts have broad discretion to evaluate and rule upon a potential juror's impartiality" (citation omitted)); OCGA § 15-12-134 ("In all civil cases it shall be good cause of challenge that a juror has expressed an opinion as to which party ought to prevail or that he has a wish or desire as to which shall succeed."); OCGA § 15-12-122 (setting forth the rules for peremptory challenges in civil cases). Evidence that is substantially more prejudicial in playing to sympathy than probative of a relevant issue may be excluded. See, e.g., *Hinton v. State*, 280 Ga. 811, 816 (631 SE2d 365) (2006) (explaining that a trial court has discretion to exclude evidence when its probative value is outweighed by the undue sympathy, hostility, or prejudice its admission might generate with the jury). Opening statements and closing arguments may be restricted. See, e.g., *Smith v. State*, 288 Ga. 348, 356 (703 SE2d 629) (2010) (emphasizing that the trial court has the discretion to stop, sua sponte, a closing argument that is "designed merely to appeal to the prejudices of jurors"); *Cotton v. Cotton*, 272 Ga. 276, 278 (528 SE2d

255) (2000) (holding that the trial court did not err in limiting closing argument where "the only effect it could have had was to prejudice the jury against [the appellee]").

Most importantly, the jury can be instructed not to consider sympathy in its deliberations — a standard jury instruction in both civil and criminal cases that may be supplemented when the risk of sympathy is higher than normal. See Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 02.550 (2010); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.11 (2011).[4] Our appellate courts have held in numerous contexts that juries must be presumed to follow such instructions. See, e.g., *Smith*, 288 Ga. at 350; *Mobley v. Wright*, 253 Ga. App. 335, 336 (559 SE2d 78) (2002). And as a final protection, the jury's verdict may be reviewed by the trial court, and again on appeal, to ensure that it was not the product of bias rather than fact and law. See, e.g., *Smith v. Milikin*, 247 Ga. 369, 372 (276 SE2d 35) (1981) (explaining that trial courts have discretionary powers to set aside verdicts and that appellate courts may do so where " 'it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means' " (citation omitted)).

These manifold protections of the right to a fair trial, the outcome of which must be the product of reason rather than sympathy or other emotion, are employed on a daily basis, in the sound discretion of judges, in courtrooms across Georgia. What is unusual — exceptional — is to exclude a party from the courtroom because of concern that her physical and mental condition will prevent the jury, notwithstanding all of these other measures, from doing its job. There is no precedent in this State for doing such a thing in a case like this.

(d) Appellees and the Court of Appeals cite *Willingham v. Willingham*, 192 Ga. 405 (15 SE2d 514) (1941), for the proposition that this Court has held that a party may constitutionally be excluded from a civil trial. See *Kesterson*, 307 Ga. App. at 248. But that case is readily distinguishable. *Willingham* was a child custody case in which the trial court excluded the parents from the courtroom while the children testified, allowing the parties' lawyers to remain and examine the children. See 192 Ga. at 408. We upheld that decision,

---

[4] Sections 02.550 and 1.70.11 both provide as follows:

Your verdict should be a true verdict based upon your opinion of the evidence according to the laws given you in this charge. You are not to show favor or sympathy to one party or the other. It is your duty to consider the facts objectively without favor, affection, or sympathy to either party.

In deciding this case, you should not be influenced by sympathy or prejudice (because of race, creed, color, religion, national origin, sexual preference, local or remote residence, economic (or corporate) status) for or against either party.

explaining that child custody proceedings have an unusual "character," in that they are "determinable by the judge without the intervention of a jury, where the principal consideration is for the present and future welfare of the children, and which is not to be strictly governed by rules applicable in ordinary trials." Id. Thus, we said, "[w]e can not see how this [exclusion] could possibly have operated to the injury of either party." Id.

This case before us now does not involve a bench trial conducted under unusual and looser rules, but rather a case which the parties had a constitutional right to have a jury decide and in which the court was to apply the usual rules. The "principal consideration" at issue here is not the best interests of a non-party, but whether Appellees committed malpractice against Kyla and, if so, what damages Appellants should recover. And the trial court did not exclude both parties; it excluded only one side to the dispute. Unlike in *Willingham*, therefore, we can see how the trial court's decision "could possibly have operated to the injury" of Appellants, and we do not see *Willingham* as precedent for excluding a party from a typical civil trial.

(e) Given the deep and strong roots of the right of a party to be present at her trial, and the absence of any known precedent in this State for depriving a party of that right in a civil case like this, the heavy burden is on Appellees to show that such deprivation was necessary to protect their right to a fair trial — that no alternative remedy would do. The record, however, does not show that Appellees sought the alternative remedies discussed above before demanding Kyla's exclusion or that the trial court considered those approaches in lieu of barring her from the courtroom.

Moreover, Appellees' ability to ever make such a showing is undermined by their acknowledgment in their brief and at oral argument that a legally competent and engaged party could not be excluded from trial no matter how much prejudicial sympathy might be evoked by her physical and mental condition. As the Court of Appeals noted, even the *Helminski* court recognized that,

> "[i]f the trial court concludes that the party can comprehend the proceedings and assist counsel in any meaningful way, the party cannot be involuntarily excluded *regardless of prejudicial impact*; in such a case, cautionary instructions will protect the interests of the defendants in a fair trial. "

*Kesterson*, 307 Ga. App. at 249-250 (quoting *Helminski*, 766 F2d at 218) (emphasis added).

Other courts have also made the point that a party's physical condition alone, no matter how evocative, cannot support her exclusion from trial. See, e.g., *Cary v. Oneok, Inc.*, 940 P2d 201, 204 (Okla. 1997) ("[W]e find no authority for the proposition that a party may be excluded solely by reason of his disfigurement."); *Carlisle v. County of Nassau*, 64 AD2d 15, 20-21 (1978) (noting that excluding a party from a trial based on his physical appearance would be "fraught with danger in its implications"). As the Florida Supreme Court put it, the right to be present in court

> should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused.

*Florida Greyhound Lines v. Jones*, 60 S2d 396, 397 (Fla. 1952).

Under the law of the land and the ambit of our Constitution, a person does not sacrifice her "right to prosecute . . . in person . . . that person's own cause in . . . the courts of this state" just because she is unattractive, or disfigured, or handicapped — even to a much greater extent than Kyla. The risk of inappropriate sympathy can and must be addressed through the many other remedies discussed above.

(f) Thus, even Appellees, the Court of Appeals, and other courts that have upheld the deprivation of a party's right to be present for trial based on the jury bias concerns that might arise from her physical and mental condition have acknowledged that such exclusion is not *necessary* to ensure the right to a fair trial. The argument for exclusion from trial therefore boils down to the assertion that the right to be present does not matter to a legally incompetent party, so that depriving her of that right is subject to a more lenient test. The test set forth in *Helminski* and endorsed by the Court of Appeals is premised on findings that the excluded party "is unable to communicate with counsel or to participate in the trial in any meaningful way; and . . . is unable to comprehend the proceedings." *Kesterson*, 307 Ga. App. at 250.

We see no need, however, to open the door to discretionary exclusion of parties from their trials even to this limited degree. To begin with, Appellees, the trial court, and the Court of Appeals cited no prior decision from the courts of this State holding that the right

of a party to be present at trial turns on the party's legal competence, although cases involving parties with disputed competence have always existed.

Nor do we think that the right to be present turns entirely on this issue. It may be that the right is founded, in large part, on what the party can do for her lawsuit — the idea that the right allows litigants to contribute actively to their own cases, whether through self-representation or by assisting counsel. Someone who is legally incompetent may not do the former, see *Lamar v. State*, 278 Ga. 150, 151 (598 SE2d 488) (2004), and may not be able to do the latter. But the lines of competency are not always that clear. For example, minor children are normally considered incompetent to act for themselves in legal affairs; they are not "sui juris." See *Clements v. Phillips*, 235 Ga. App. 588, 589 (510 SE2d 311) (1998) (explaining that a minor child "is required to appear [in court] through a guardian or next friend," who acts as an "officer of the court to protect the rights of the minor who is considered incapable of managing his own affairs"); *City of Dalton v. Cochran*, 80 Ga. App. 252, 255 (55 SE2d 907) (1949) ("The purpose of a guardian ad litem or next friend is to furnish a person sui juris to carry on the litigation for the minor's benefit."); OCGA § 9-11-17 (c). However, a bright 17-year-old party about to head off to college may well have a greater awareness of her legal proceedings and ability to assist in them than many a sui juris adult. And counsel may benefit from their clients' recollection of the events being disputed, or knowledge of the witnesses, or views on how the case should be conducted, or simply their presence in court, even if the client is not fully competent. See Georgia Rules of Professional Conduct 1.14 (a) ("When a client's capacity to make adequately considered decisions in connection with a representation is diminished, whether because of minority, mental impairment or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client."). If nothing else, the party's presence in court may have a "moral effect" on witnesses, encouraging truth-telling. See *Anderson v. Snyder*, 99 A 1032, 1034 (Conn. 1917).

As best we can tell, Georgia courts have never conditioned the right to be present on proof that the party is legally competent, or that she will actually pay attention to the proceedings and actively participate in them. Thus, for example, a person who is incompetent under the *Helminski* test and has been ordered hospitalized or treated involuntarily would still have a right to be present during any

subsequent hearings to determine whether her involuntary treatment should continue.[5] Even if unable to fully comprehend the nature of the proceedings or to significantly assist counsel, the party might have something to add or to say or a truth-telling effect on witnesses talking about her — and at least she will be a part of the process that determines her fate.

There is, in other words, a personal element to the right to be present. The right is based not only on what the party can do to the case, but on what the case will do to the party. It is the *party's* interests that are being determined by the jury and the judge, and it is the *party's* life that will be directly affected by the outcome of the case. See *Cary*, 940 P2d at 206 (explaining that courts should not "trivialize [a party's] right to observe and be a part of the proceedings which likely will profoundly influence much of the rest of his life"); *Snyder v. Massachusetts*, 291 U. S. 97, 132 (54 SC 330, 78 LE 674) (1934) (Roberts, J., dissenting) (noting that "the right [to be present] is fundamental and assures him who stands in jeopardy that he may in person, see, hear and know all that is placed before the tribunal having power by its finding to deprive him of liberty or life"). Thus, even if a person is deemed incompetent as a matter of law (for example, a young child like Kyla) or as a matter of fact (as Kyla may be), and must therefore be represented by a parent, guardian, or custodian, the person is still considered to be the "real party in interest." See OCGA § 9-11-17 (a); *Clements*, 235 Ga. App. at 589. Even if she is unable, or the law does not allow her, to make the decisions about her case, she remains a person directly affected by the verdict. The individuals whose legal disputes are brought to our courts for decision cannot be treated merely "as an exhibit, as a piece of evidence," *Kesterson*, 307 Ga. App. at 250, regardless of their legal competence.

Moreover, the trial court ruled, and Appellees and the Court of Appeals do not dispute the court's discretion to make this ruling, that if Kyla's physical or mental condition became "essential and relevant" to an issue during the liability phase, the court would permit Appellants to show and describe this "piece of evidence," *Kesterson*, 307 Ga. App. at 250, to the jury, however sympathy-evoking her presence

---

[5] See OCGA § 37-3-1 (8) ("mentally ill" persons who are required to undergo involuntary treatment are entitled to "full and fair hearings" under OCGA §§ 37-3-83 and 37-3-93, including the "right to be present," unless waived, to determine if the involuntary treatment should continue). For purposes of Title 37 " '[m]entally ill' means having a mental illness," OCGA § 37-1-1 (13), and " '[m]ental illness' means a disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life," OCGA § 37-1-1 (12).

would have been. See *Sprouse v. State*, 242 Ga. 831, 833 (252 SE2d 173) (1979) (rejecting the argument that relevant testimony by an aggravated assault victim about the extent of her injuries could be excluded because the testimony would be "inflammatory and prejudicial"); *International Harvester Co. v. Cunningham*, 245 Ga. App. 736, 739-740 (538 SE2d 82) (2000) (holding that photographs depicting reconstructive surgery for facial injuries that the plaintiff suffered were relevant to his personal injury action and were not inadmissible on the ground they might inflame the jury); *Helminski*, 766 F2d at 211-213 (noting that the excluded party's condition had been "described graphically" to the jury before the defense objected to his being present in the courtroom as prejudicial).

The trial court here did not explain why the test for admission of this type of evidence should be that it be "essential and relevant," rather than merely relevant. But in any event, the trial court permitted testimony about Kyla's condition and allowed Kyla to be present in court at the start of voir dire and for a portion of the cross-examination of one of Appellees' expert witnesses; presumably, the court also would have allowed in photographs or videotapes depicting Kyla's appearance to the extent it was relevant to the issue of what caused her injuries.[6]

Furthermore, had the jury found liability, under the Court of Appeals' *Helminski*-based test, Kyla would have been allowed to be present in court throughout the damages phase of the trial — a phase which, of course, can result in an element of the jury verdict that may be even more subject to distortion due to sympathy than the liability phase. See *Kesterson*, 307 Ga. App. at 250 (holding that "a trial court has the discretion to limit a severely injured plaintiff's presence *during the liability phase* of a bifurcated trial" (emphasis added)); *Helminski*, 766 F2d at 217 ("Exclusion of a party from the damages portion of the proceedings is, however, inappropriate."). The *Helminski* court also would not allow the exclusion of a party whose incompetence is not due to the defendant's alleged conduct, see 766 F2d at 215, n. 7, even though the effect on the party's ability to comprehend and participate in the trial would be the same.

All of this makes the test the *Helminski* court crafted and the Court of Appeals adopted even more arbitrary and disputable in actual application. The party whose physical and mental condition is supposedly so sympathy-evoking that no means short of barring her

---

[6] The trial court excluded some video clips and photographs of Kyla during the liability phase of the trial on the ground that those materials were not relevant to the cause of her injuries, only damages, and the Court of Appeals found no abuse of discretion in that ruling. See *Kesterson*, 307 Ga. App. at 252.

from her own trial will protect the other side's right to a fair trial may nevertheless not be barred from trial. See *Kesterson*, 307 Ga. App. at 249-250. Unless she is wholly incompetent, in which case she may be excluded. See id. at 250. Except for when her incompetency was not allegedly caused by the opposing party. See *Helminski*, 766 F2d at 215, n. 7. Or when evidence of her condition is relevant for evidentiary reasons, including during the entire damages portion of the trial. See id. at 217; *Kesterson*, 307 Ga. App. at 250. Rather than trying to make logic of this scheme and invite disputes about all of these issues and the trial courts' resolution of them,[7] we simply direct trial courts to deal with concerns about potential jury sympathy on this ground in the ways they have customarily and historically done so on this and other grounds.

(g) We recognize that the *Helminski* test endorsed by the Court of Appeals is strict, and it would open the door to excluding parties from their trials only in narrow circumstances. Nevertheless, as Appellees and the authorities on which they rely acknowledge, the door would not be opened even a crack if the party at issue were legally competent — even if the sympathy potentially generated by her physical and mental condition and its impact on the opposing party's right to a fair trial was exponentially greater than that potentially generated by a legally incompetent party like Kyla. " '[I]n such a case, cautionary instructions will protect the interests of the defendant[s] in a fair trial.' " *Kesterson*, 307 Ga. App. at 250 (quoting *Helminski*, 766 F2d at 218). If that is so, then cautionary instructions — and the other commonplace and time-tested means of ensuring that both parties receive a fair trial, see Division 2 (c) above — can be used just as well when the party is legally incompetent, without infringing on that party's right to be present.

Our conclusion is in line with that of many other state and federal courts. See, e.g., *Jordan v. Deery*, 778 NE2d 1264, 1270-1272 (Ind. 2002) (rejecting the *Helminski* test, which had been adopted by the Indiana Court of Appeals, and holding that the party in question, a child with severe cerebral palsy, was improperly excluded from trial); *McEachron v. Glans*, 1999 U. S. Dist. LEXIS 21926, *12-13 (N.D. N.Y. 1999) (Case No. 98-CV-17, Aug. 23, 1999) (ruling that a comatose or minimally conscious party could not be excluded from trial unless his presence became disruptive); *Cary*, 940 P2d at 204-205 (holding that a severely burned young child could not be excluded from trial based

---

[7] The parties here, for example, devote substantial briefing to disputes over whether, under the *Helminski* test, the trial court should have allowed Kyla to be present for two additional (says Appellants) or one fewer (says Appellees) portions of the liability trial.

on his physical appearance); *Mason v. Moore*, 226 AD2d 993, 993 (N.Y. App. Div. 1996) (holding that a party who "sustained brain damage as a result of asphyxia during delivery, resulting in spastic quadriplegia with severe developmental delays and physical disability" could not be excluded from trial); *Marks v. Mobil Oil Corp.*, 562 FSupp. 759, 763, 768 (E.D. Pa. 1983) (rejecting the contention that the court erred in failing to exclude from trial an "incompetent, spastic, and paraplegic" party, explaining that the court "can at this time envision no reason to exclude a party because of his injuries, particularly where, as in this case, the party's behavior at trial was not disruptive"); *Florida Greyhound Lines*, 60 S2d at 397 (holding that the plaintiff, who "was on a stretcher and, apparently, in a weak, sickened and stupefied condition," could not be excluded from her trial); *Chicago G. W. R. Co. v. Beecher*, 150 F2d 394, 399 (8th Cir. 1945) (holding that an infant child injured by the defendant's train was properly not excluded from the trial). There are also cases to the contrary, although some of them, like *Helminski*, were decided under federal law, which, as discussed in Division 2 (a) above, is less protective of the right of litigants to be present in court than is the law of Georgia. See, e.g., *In re Richardson-Merrell, Inc.*, 624 FSupp. 1212, 1223-1224 (S.D. Ohio 1985); *Green v. N. Arundel Hosp. Assn.*, 785 A2d 361, 374-378 (Md. 2001); *Morley v. Superior Court*, 638 P2d 1331, 1333-1334 (Ariz. 1981).

We reiterate in closing that our decision should not be read to limit a trial court's discretion to control the courtroom and ensure the orderly and dignified adjudication of cases. If, for example, a party's physical and mental condition is fabricated for trial or is excessively paraded to the jury, it might be appropriate to sanction the party with exclusion from part or all of the proceeding. Similarly, a party who disrupts the proceedings, even if that disruption is the result of her physical and mental condition or efforts to treat or respond to it, might be excluded if that is the remedy for that problem, as with courtroom disruptions caused by other things. See *Cary*, 940 P2d at 204 ("It appears to be universally settled that a party's disruptive behavior is a legitimate basis for excluding the litigant."). But a party may not be denied her right to be present in court based solely on the risk that her physical or mental condition may generate improper sympathy from the jury, even if her condition prevents her from actively participating or fully understanding the proceedings.[8]

---

[8] Our resolution of this issue makes it unnecessary to consider the potential application of the Americans with Disabilities Act (ADA), 42 USC § 12101 et seq., to decisions excluding disabled persons from the courtroom — an issue that was not raised and ruled on below but

For these reasons, the exclusion of Appellant Kyla Kesterson from the courtroom during almost all of her trial was error, and she is entitled to a new trial. See *St. Paul Fire & Marine Ins. Co.*, 113 Ga. at 789 (reversing judgment based in part on a party's exclusion from trial except while she was testifying as a witness); *Jordan*, 778 NE2d at 1272 (reversing judgment based on the plaintiff's exclusion from the liability phase of the trial). See also *Morley*, 638 P2d at 1334 (despite adopting the *Helminski* test, reversing the judgment based on the plaintiff's exclusion from the damages phase of the trial). Accordingly, we reverse the decision of the Court of Appeals and remand for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur, except Melton, J., who dissents.*

MELTON, Justice, dissenting.

In *Helminski v. Ayerst Labs.*, 766 F2d 208 (6th Cir. 1985), the United States Court of Appeals set forth a test which strictly guards the rights of an impaired party to be present during his or her trial. At the same time, the *Helminski* test recognizes that, in some rare cases, the party may be so impaired that she cannot assist her counsel or understand the proceedings in any way and, at the same time, the impaired party's presence in the courtroom may impede the proper functioning of the jury. Under these rare circumstances, the *Helminski* test would allow the trial court to limit the presence of the impaired party during the liability phase of trial. In other words, the *Helminski* test is narrowly drafted to allow exclusion of an impaired party only when the party's presence would harm the judicial process while simultaneously providing no benefit to the party. I believe that the majority errs by rejecting this test. As a result, I must respectfully dissent.

DECIDED JUNE 18, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Parks, Chesin & Walbert, David F. Walbert, Charles A. Mathis, Jr., Susan M. Cremer*, for Kesterson et al.

*Forrester & Brim, Weymon H. Forrester, Tracy M. Baker*, for Walter Jarrett, M.D. and Athens Obstetrics and Gynecology.

might need to be addressed in the future if we affirmed the Court of Appeals. See *Jordan*, 778 NE2d at 1266-1267 (noting the ADA issue but avoiding it by declining to follow *Helminski*); *Cary*, 940 P2d at 205 (noting that the *Helminski* test may need to be re-examined in light of the passage of the ADA but declining to address the ADA issue on the ground it was not raised in the trial court).

*Carlock, Copeland & Stair, Thomas S. Carlock, Eric J. Frisch, Begnaud & Marshall, Andrew H. Marshall,* for St. Mary's Healthcare System.