**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 13, 2012

# In the Court of Appeals of Georgia

A12A0199. MORRIS v. TURNKEY MEDICAL ENGINEERING, INC.

PHIPPS, Presiding Judge.

Following a trial, the jury rendered a verdict in favor of Eric Morris on his claims for negligence against Turnkey Medical Engineering, Inc., and awarded Morris compensatory damages in the amount of $50,000, for injuries he sustained when medical equipment serviced by Turnkey exploded. The trial court entered judgment on the verdict. Morris moved for a new trial, which the trial court denied.

On appeal, Morris contends that the trial court: (1) improperly excluded him from the courtroom during the trial; (2) improperly "appointed" a defense-biased physician to examine him and excluded Morris's counsel from being present during the medical examination; (3) improperly refused to allow certain exhibits that were

admitted into evidence to go out with the jury during deliberations; and (4) improperly denied his motion for a new trial because the amount of the verdict was inadequate and contrary to the evidence. For the reasons that follow, we reverse and remand this case to the trial court for a new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on December 7, 2006, Morris was employed on a rigging crew and was assisting other workers in moving an "MRI" machine to a different location. During the move, the machine exploded and Morris, who was found lying on the floor not far from the machine, did not immediately respond when his supervisor called his name. Just days prior to the explosion, Turnkey had serviced the machine in preparation for it to be decommissioned. The day of the explosion (after the explosion), Morris was treated at an emergency room where he complained of pain in his right ear and wrist. Morris reported that on a pain scale of "zero to ten" his pain level was a "one."

The emergency room physician, who had been trained in treating traumatic brain injuries, testified that Morris's "appearance was well, psychiatric, he was

---

[1] *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (a) (487 SE2d 91) (1997) (in reviewing the denial of a motion for new trial based on the sufficiency of the evidence, an appeals court must view the evidence in the light most favorable to upholding the jury's verdict).

appropriate; skin, I commented multiple minimal abrasions; his eyes were normal; ear, nose, and throat exam was normal. I also documented a pertinent negative in the fact of his tympanic membranes, his ear drums, were normal." A neurological exam was conducted and the results were "completely normal." The following day, Morris was seen at an urgent care facility. The records from that facility showed that Morris was treated there for only an injury to his wrist and that he did not complain of any head injury; Morris denies that he failed to complain of a head injury. In July 2007, Morris was terminated from his place of employment because he refused to take a drug test.

In November 2007, Morris was examined by a neurologist who opined that, to a "reasonable degree of medical certainty," as a result of the machine's explosion, Morris suffered "a closed-head injury of at least moderate severity. That he had been knocked out. That he was having post-traumatic migraine headaches. That he was having multiple problems with higher cortical thinking and that he might even be having post-traumatic stress disorder with depression. . . ." The neurologist testified that Morris did not state that he had hit his head during the explosion. He concluded, among other things, however, that Morris had suffered a concussion, or, in other

words, "head-trauma" and was "not thinking right." He testified that if post-concussive symptoms continued, Morris's injuries could be permanent.

Morris was examined by several other physicians for the brain injury he claimed he had sustained from the explosion. The physicians' opinions varied as to whether Morris had sustained a brain injury.

1. Morris contends that the trial court violated his due process rights by "excluding and restricting [his] presence at trial without an evidentiary hearing, findings of fact, or bifurcation of the damages phase." We agree that the trial court's exclusion or restriction of Morris's presence in the courtroom during portions of the trial was erroneous and is grounds for a new trial.

The trial transcript shows the following exchange occurred on what appeared to be the second day of trial (the first day being jury selection):

> [DEFENDANT'S ATTORNEY]: Judge, this is a little unusual but it is very obvious that Mr. Morris appears to be in a lot of distress here. And, you know, if he is feeling so bad and he is so sick and he has got to keep his head down throughout the whole day I wonder maybe if he needs to leave and go home and get better. But if he is going to be in court, then I just question if that is the appropriate place.
>
> [PLAINTIFF'S ATTORNEY]: Your Honor, he just threw up in the hall.

4

THE COURT: I know and I feel awful about it.

[PLAINTIFF'S ATTORNEY]: This is one of his symptoms, Your Honor. They say there is nothing wrong with him. He is entitled to be here. The jury is entitled to see --

THE COURT: Well, he is entitled to be here but if he is going to be here he is going to be sitting up. If he is in the courtroom, he is going to be sitting up. This is the way it is going to be.

[PLAINTIFF'S ATTORNEY]: And why is that? He is not entitled to be here?

THE COURT: He is entitled to be here, yes. We are all entitled to be here. But this jury is going to be asked to give him millions of dollars and he is going to sit up and --

[PLAINTIFF'S ATTORNEY]: They are watching every single minute.

THE COURT: Exactly. Which is --

[PLAINTIFF'S ATTORNEY]: If he is sitting up, they may not even notice it. They may not even be able to tell. They are looking at him all the time.

THE COURT: Well, that is too bad. We all may be in pain and they may not be able to tell. But him having his head on the table while the jury

is decide is not going to cut it. So, that is just the way it is. If he can be in here and participate, that's fine. If he needs to come and go, fine. But we are not going to engender sympathy in the jury. The jury is going to decide based on the evidence. And, yes, they are going to watch him which is all the more reason that he needs to sit up.

[PLAINTIFF'S ATTORNEY]: Well, Your Honor, if he can't physically sit up because he have such headaches and nausea, what is he supposed to do?

THE COURT: I guess rest and come in. Because we are not going to go through a whole day where he lies his head on the table. He was here yesterday and he sat up.

[PLAINTIFF'S ATTORNEY]: And when he had terrible headaches yesterday, he had to put his head down.

THE COURT: That was fine. That was partially through the day. We are not going to start off at 9:00 a.m.

. . .

[PLAINTIFF'S ATTORNEY]: I think he has a right to be here.

THE COURT: He does have a right to be here. But we also have a right to behave a certain way in the courtroom. So when he feels better, he can come back in. So go talk to him. If he feels like he can sit up, that's fine. I am not saying he can never put his head down but we are not

6

going through the whole day of trial with him laying his head on the table. We are not doing that. So go talk to him and come right back in.

(whereupon [Plaintiff's attorney] exited the courtroom to speak to the plaintiff, Eric Morris)

[PLAINTIFF'S ATTORNEY]: Your Honor, Eric is going to go home and try to come back this afternoon.

THE COURT: Okay.

[PLAINTIFF'S ATTORNEY]: We object to him being excluded from --

THE COURT: I am not excluding him, [Plaintiff's attorney]. Don't even go there.

[PLAINTIFF'S ATTORNEY]: We object to the restrictions placed on his appearance.

THE COURT: Okay. Well, I am sorry you do. That's fine. Bring the jury in.

In *Kesterson v. Jarrett*,[2] the Supreme Court of Georgia recently held:

---

[2] *Kesterson v. Jarrett*, _ Ga. _ (_ SE2d _) (Case No. S11G0590, decided June 18, 2012).

7

a party may not be excluded from her own trial simply because her physical and mental condition may evoke sympathy. . . . Instead, trial courts can and should address the risk of undue sympathy using jury instructions and other common and time-tested means of ensuring that both parties receive a fair trial, without infringing on the parties' right to be present.[3]

"[O]ther common and time-tested means" may include changing venue, questioning prospective jurors in voir dire and excusing prospective jurors for cause or peremptorily, excluding evidence that is substantially more prejudicial in playing to sympathy than probative of a relevant issue, restricting opening statements and closing arguments, and reviewing the jury's verdict in the trial court and on appeal to ensure that it was not the product of bias rather than fact and law.[4]

"When the newly promulgated law is a judicial decision, then retroactive application is favored[5]. . . . unless it comes within the limited exception to the general

---

[3] Id. at 2.

[4] Id. at 13-15.

[5] *Banks v. ICI Americas*, 266 Ga. 607, 609 (3) (469 SE2d 171) (1996).

8

rule of retroactive application."[6] In determining whether case law should be applied prospectively or retroactively, a court should make a tripartite examination:[7]

> (1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. (2) Balance . . . the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation. (3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.[8]

Examining these guidelines, it is clear that the recent opinion of the Supreme Court in *Kesterson* should be applied retroactively to this case. Considering the first factor, in its decision, the Supreme Court did not overrule past precedent upon which the parties, and particularly Turnkey, relied; and although the decision may not have

---

[6] *Ellis v. State*, 272 Ga. 763, 765 (1) (534 SE2d 414) (2000) (citation, punctuation, and footnote omitted).

[7] *Abu-Khdeir v. T. J. Maxx*, 191 Ga. App. 523, 524 (382 SE2d 216) (1989).

[8] Id.; *Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709, 712 (3) (300 SE2d 673) (1983).

9

been clearly foreshadowed, the Court's decision followed the trend[9] of safeguarding

a civil plaintiff's right to be present in the courtroom at trial.[10] Considering the second

factor, before the Supreme Court's opinion, there were no published cases in which

Georgia courts had explicitly set forth alternative remedies a trial court must consider

before barring from the courtroom a party to a case on trial; thus, we find that the

purpose and effect of the Supreme Court's holding will be best served by retroactive

application of the holding and would further its operation.[11]

_____

[9] *Abu-Khdeir v. T. J. Maxx*, supra.

[10] *Ga. Railroad & Banking Co. v. Tice*, 124 Ga. 459, 465 (52 SE 916) (1905) (party to cause on trial had a right to remain in court during entire trial); *Saint Paul Fire &c.Co. v. Brunswick Grocery Co.*, 113 Ga. 786, 789 (39 SE 483) (1901) (party to the issue on trial had right to be present, and it was manifestly erroneous to exclude her from the courtroom); *Walden v. MARTA*, 161 Ga. App. 725, 726 (288 SE2d 671) (1982) (party to the issue on trial has a right to be present); *Mays v. Tharpe & Brooks*, 143 Ga. App. 815, 816 (240 SE2d 159) (1977) (a substantial right of a party to litigation is to be present at the trial and render assistance to his counsel as the developments unfold); *Cox v. Yates*, 96 Ga. App. 466 (3) (100 SE2d 649) (1957) (generally, parties to civil actions in this state have the right to be present at all stages of the trial); *Boutelle v. White*, 40 Ga. App. 415 (149 SE 805) (1929) (trial judge has no right to exclude from the courtroom, during the taking of testimony, a party to the case on trial); compare *Willingham v. Willingham*, 192 Ga. 405, 408 (2) (15 SE 514) (1941) (the right of a party to a civil action to remain in the courtroom during the entire trial is not absolute; trial judges may, in the exercise of their discretion, exclude parties from civil trials under certain circumstances).

[11] See *Banks*, supra at 609 (2).

Concerning the third factor, there is no valid vested interest in the prior absence of a clear procedure to safeguard a litigant's right to be present in the courtroom during trial.[12] In sum, all three factors favor retroactive application of the Supreme Court's recent opinion.

Thus, applying the Supreme Court's holding in *Kesterson*, the record in this case fails to show that Turnkey sought any of the alternative remedies discussed above before requesting Morris's exclusion, or that the trial court considered those approaches in lieu of barring Morris from the courtroom if he was going to lay his head on the table.[13] The court's exclusion of Morris from the courtroom was error, and Morris is entitled to a new trial.[14] Accordingly, we reverse the judgment and remand this case to the trial court for a new trial.[15]

2. Morris contends that the trial court's order requiring him to submit to a medical examination pursuant to OCGA § 9-11-35 was improper because the

---

[12] See generally *Ellis*, supra; *Griffin v. Bankston*, 302 Ga. App. 647, 651 (1) (a), n.2 (691 SE2d 229) (2009).

[13] See *Kesterson*, supra at 17.

[14] Id. at 30.

[15] Id.

physician had been retained by the defense, was biased toward the defense, and was not "independent." Morris further contends that the trial court erred in excluding his counsel from being present when the physician examined him. Because this issue may arise on re-trial, we will address it.

(a) Concerning the court's order requiring Morris to submit to a medical examination, "a plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the *defendant* with good cause for an examination to determine the existence and extent of such asserted injury."[16] In that regard, OCGA § 9-11-35 (a) provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical examination by a physician or to submit to a mental examination by a physician or a licensed psychologist or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

---

[16] *Everett v. Goodloe*, 268 Ga. App. 536, 546 (3) (602 SE2d 284) (2004) (punctuation and footnote omitted; emphasis supplied).

"The grant or denial of a motion requesting such an examination rests in the sound discretion of the trial court."[17] "This court has repeatedly held that it will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion."[18] An order for the physical or mental examination of an individual pursuant to OCGA § 9-11-35 is a "discovery matter."[19]

Contrary to Morris's contention, the statute does not require that the examining physician be one who has not been retained by the defendant or is otherwise not biased toward the defense. And "[a]lthough an expert may be paid, those circumstances may be explored on the stand, and any question of bias is for the jury." We fail to see any abuse of discretion in the trial court's order requiring Morris to submit to a medical examination pursuant to OCGA § 9-11-35.[20]

(b) Concerning Morris's contention that the trial court erred in excluding his counsel from being present when the physician examined him pursuant to a court

---

[17] Id. (footnote omitted).

[18] *Roberts v. Forte Hotels*, 227 Ga. App. 471, 473 (3) (489 SE2d 540) (1997) (citation and punctuation omitted).

[19] See *Brake v. Mintz*, 193 Ga. App. 662, 663-664 (388 SE2d 715) (1989).

[20] See *Roberts*, supra.

13

order, this issue is waived.[21] In his brief opposing Turnkey's motion for an examination pursuant to OCGA § 9-11-35, Morris objected solely on the ground that the Turnkey's desired physician was biased and not "independent."

3. Concerning Morris's remaining contentions, given our conclusion in Division 1,[22] we need not address them.

*Judgment reversed and case remanded. Ellington, C. J., and Dillard, J., concur.*

---

[21] *Francis v. Francis*, 279 Ga. 248, 249 (611 SE2d 45) (2005) (objecting on specific grounds at trial waives the grounds not asserted).

[22] Supra.